**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLIED WORLD ASSURANCE COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> STEADFAST INSURANCE COMPANY, <br><br> Defendant. | Civil Action <br><br> Case No. 2:14-cv-2511-GAM |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY
JUDGMENT OF PLAINTIFF ALLIED WORLD ASSURANCE COMPANY, LTD.**

---

Of Counsel and On the Brief:

Christopher R. Carroll, Esq.
James T. Byrnes, Esq.

**CARROLL, McNULTY & KULL LLC**
Two Liberty Place
50 South 16th Street, Suite 2600
Philadelphia, Pennsylvania 19102
(267) 467-6700
Counsel for Plaintiff
Allied World Assurance Company, Ltd.

## TABLE OF CONTENTS

                                                **Page**

TABLE OF AUTHORITIES .................................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................................ 3

      A.      THE UNDERLYING ACTION………………………………………………...3

      B.      THE RELEVANT INSURANCE POLICIES ........................................................ 4

      C.      STEADFAST'S RETENTION OF APPELLATE COUNSEL .............................. 8

III. LEGAL ARGUMENT .................................................................................................... 9

      A.      SUMMARY JUDGMENT STANDARD AND PENNSYLVANIA
            INSURANCE POLICY INTERPRETATION PRINCIPLES ................................ 9

      B.      BECAUSE THE HOSPITAL'S SIR REMAINED UNPAID AT THE
            TIME STEADFAST RETAINED AND PAID THE HANGLEY FIRM,
            THE FEES PAID BY STEADFAST TO THE HANGLEY FIRM
            DO NOT REDUCE THE LIMITS OF INSURANCE UNDER
            THE STEADFAST POLICY ................................................................................ 10

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

                                                            **Page**

Alexander v. CNA Ins. Co.,
   441 Pa. Super. 507, 509-10 (1995) ...........................................................................10

Bishops, Inc. v. Penn Nat'l Ins.,
   984 A.2d 982, 989 (Pa. Super. Ct. 2009) ..................................................................10

Erie Ins. Exchange v. Baker,
   972 A.2d 507, 512 (Pa. 2008) ...................................................................................10

Hines v. Consol. Rail Corp.,
   926 F.2d 262, 267 (3d Cir. 1991) ................................................................................9

Lexington Ins. Co. v. Western Pa. Hosp.,
   423 F.3d 318, 323 (3d Cir. 2005) ..............................................................................10

Liberty Mut. Ins. Co. v. S.G.S. Co.,
   456 Pa. 94, 97 (1974) ...............................................................................................10

Steuart v. McChesney,
   444 A.2d 659, 663 (Pa. 1982) ...................................................................................10

Pressley v. Travelers Prop. Cas. Corp.,
   817 A.2d 1131, 1138 (Pa. Super. Ct. 2003) ..............................................................10

## Rules

Fed. R. Civ. P. 56(c) ............................................................................................................9

## I. PRELIMINARY STATEMENT

Plaintiff Allied World Assurance Company, Ltd. ("Allied World") brings the instant Motion for Summary Judgment against Defendant Steadfast Insurance Company ("Steadfast") in order to recover amounts that Steadfast improperly eroded off the limit of its insurance policy in connection with an underlying action/appeal, and which Allied World was then forced to absorb within its excess layer of insurance upon settlement of the underlying action.

Both Steadfast and Allied World insured Pottstown Hospital Company, LLC d/b/a Pottstown Memorial Medical Center (the "Hospital"), but at different levels of excess insurance. Steadfast issued a first-layer excess liability policy to the Hospital with a limit of $20 Million in excess of a primary $5 Million self-insured retention ("SIR"). Allied World issued a second-layer excess liability policy to the Hospital with a $25 Million limit in excess of the Steadfast policy.

Pursuant to the parties' stipulation and this Court's Order of March 23, 2015, the parties have agreed to narrow the issues presented in this action and to brief, on cross-motions for summary judgment to this Honorable Court, two discrete issues: (1) whether Steadfast had the right to participate in the defense of the Hospital in the underlying action and retain the law firm of Hangley Aronchick Segal Pudlin & Schiller (the "Hangley Firm") to represent the Hospital on appeal; and (2) whether the fees paid by Steadfast to the Hangley Firm reduced the limits of the Steadfast policy.

In general, Allied World does not dispute that, under the terms of the Steadfast policy, Steadfast had the right to participate in the Hospital's defense during the appeal. However, whether the costs incurred by Steadfast in connection with its participation in the Hospital's defense actually reduced the limit of insurance available under the Steadfast policy is an entirely

1

separate issue, and is controlled by the precise language of the Steadfast policy. For all the reasons discussed below, the fees paid by Steadfast to the Hangley Firm did not erode the limit of insurance available under the Steadfast Policy.

Specifically, Steadfast's position ignores several key elements which are necessary for the appellate costs at issue to qualify as "Defense Expenses" and erode the limit of insurance. Indeed, per Endorsement No. 4 of the Steadfast Policy, the payment of "Defense Expenses" by Steadfast reduces the Limits of Insurance available under the policy. However, "Defense Expenses" is defined as, in pertinent part, "a payment allocated to investigate or defend a specific 'Claim' *to the extent that payment is not included in 'Underlying Insurance*.'" (Emphasis added.) In turn, "Underlying Insurance" means "any 'Self-Insured Retention' listed in the Schedule of Underlying Self Insurance."

To that end, as noted above, the Steadfast Policy is subject to a $5 Million SIR. Importantly, pursuant to Endorsement No. 5 in the Steadfast Policy, "[a]ny 'Defense Expenses' incurred by an Insured will be the responsibility of the Insured and such 'Defense Expenses' will *not* erode or exhaust the aggregate limits of the 'Self-Insured Retention.'" (Emphasis added.) This endorsement further provides that "[a]ny aggregate limits of insurance for such 'Self-Insured Retention' will be considered eroded or exhausted *only by actual payment of 'Claims' that would be insured by the terms of this policy*." (Emphasis added.)

Thus, pursuant to the Steadfast policy, the Hospital's $5 Million SIR could only be satisfied through actual indemnity payments. Indeed, the Payment of Loss provision in the Steadfast Policy specifically states that "[Steadfast is] obligated to pay under this policy only after . . . the Named Insured has paid the . . . 'Self-Insured Retention.'"

Consequently, up and until the payment of the settlement in the underlying action in

2

December 2013, the Hospital had never actually paid its $5 Million SIR and, therefore, any defenses expenses incurred during the appeal remained within Underlying Insurance pursuant to the terms of the Steadfast policy. Per the policy language, it is clear that it was impossible for such expenses to qualify as "Defense Expenses" and reduce the limit of insurance available under the Steadfast policy. Quite simply, Steadfast's position would require the conclusion that Steadfast could exhaust a portion of its limits <u>before</u> the Hospital actually exhausted its SIR.

For all the reasons discussed herein, Allied World respectfully requests that this Honorable Court enter Summary Judgment in favor of Allied World and declare that the fees paid by Steadfast to the Hangley Firm, plus the cost of the appeal bond, did not reduce the limit of insurance available under the Steadfast policy and, therefore, Allied World is entitled to damages against Steadfast in the amount of $751,765.00 plus interest.

## II. FACTUAL BACKGROUND

### A. THE UNDERLYING ACTION

The facts giving rise to this claim are generally not in dispute and Allied World briefly summarizes the relevant facts to the instant Motion for Summary Judgment. This insurance coverage action arises out of an underlying medical malpractice action previously pending in the Court of Common Pleas for Philadelphia County, Pennsylvania, Case No. 091104525 (the "Underlying Action"). Affidavit of Christopher R. Carroll, Esq. ("Carroll Aff.") at Ex. A. Specifically, underlying plaintiffs, Victoria Upsey and Steven Nicholson, in their own right and on behalf of their minor child, Parrys Nicholson-Upsey (collectively referred to at times as "Plaintiffs"), alleged brain hypoxia injuries arising out of the birth of Parrys Nicholson-Upsey. Ex. A.

3

A jury trial was held in connection with the Underlying Action from April 13, 2012 through May 4, 2012 and, ultimately, on May 4, 2012, the jury returned a verdict in favor of Plaintiffs and against solely the Hospital for $78,404,669.00. Carroll Aff. at Ex. B. The majority of these damages, however, were for future medical costs associated with Plaintiff Parrys Nicholson-Upsey's care and, therefore, the total amount of the jury's award bore a net present value of approximately $38.77 Million (exclusive of delay damages and post-judgment interest). Carroll Aff. at Ex. C.

Judgment was entered on October 1, 2012 against the Hospital and the Underlying Action was appealed to the Pennsylvania Superior Court, Docket No. 2923 EDA 2012. Ex. C; Carroll Aff. at Ex. D. After fully briefing all issues on appeal, the Underlying Action was settled in December 2013 on behalf of the Hospital for $31,500,000.00 (the "Underlying Settlement"). Carroll Aff. at Ex. E.

**B.     THE RELEVANT INSURANCE POLICIES**

Allied World issued an excess liability indemnity policy to Community Health Systems, Inc. ("CHS")[1] with limits of $25 Million in excess of a $25 Million per occurrence retention (the "Allied World Policy"). Carroll Aff. at Ex. F. In order to satisfy its per occurrence retention under the Allied World Policy, CHS procured a $20 Million health care umbrella liability policy through Steadfast, which includes a $5 Million SIR (the "Steadfast Policy"). Carroll Aff. at Ex. G.

For purposes of the instant coverage dispute, only the terms and conditions of the Steadfast Policy are relevant. Notably, neither Steadfast nor Allied World contend that the underlying claim is not otherwise covered under their respective policies. Rather, as discussed

---

[1] Although CHS was not a party to the Underlying Action, there is no dispute that the Hospital qualifies as an insured under all of the relevant insurance policies.

4

above, the focus of the issues presented in this action is upon (a) the defense obligations under the Steadfast Policy; (b) the exhaustion of the SIR under the Steadfast Policy; and (c) whether the costs paid to the Hangley Firm on appeal by Steadfast eroded the limit of insurance under the Policy.

In that respect, the Steadfast Policy contains the following relevant defense provisions, as amended by Endorsement No. 4:

> **III.** **DEFENSE AND EXPENSES FOR CLAIMS**
>
> **A.** We shall the right and duty to investigate, defend and settle any "Claim" to which this insurance applies, but only if no other insurer is obligated to investigate, defend and settle such "Claim" and if:
>
> **1.** Any "Underlying Insurance" or "Other Insurance" has been exhausted by the payment of "Claims" to which this policy applies; or
>
> **2.** Damages are sought for an "Occurrence," "Medical Incident" or "Claim" which is covered by this policy but for which no "Underlying Insurance" or "Other Insurance" applies.
>
> \*   \*   \*
>
> **C.** If "Underlying Insurance" or any "Other Insurance" exists, we shall have the right, but not the duty, to participate in the investigation, settlement or defense of any "Occurrence," "Medical Incident" or "Claim" against the Insured that in our judgment may exceed that "Applicable Underlying Limit."
>
> **D.** We will pay, as damages, "Defense Expenses" and "Post-judgment Interest" incurred by us in the investigation or defense of any "Claim." The payment of such "Defense Expenses" and "Post-judgment Interest" shall reduce the Limits of Insurance provided under this policy.

> **E.** Our right and duty to defend an Insured against any "Claim" ends after we have exhausted the applicable Limit of Insurance as stated in the Declarations, in payment of judgments, settlements, "Defense Expenses" or "Post-judgment Interest."

Ex. G; Carroll Aff. at Ex. H.

As noted, the Steadfast Policy is subject to a $5 Million SIR. Relevant to the instant dispute, with respect to exhaustion of the SIR (as amended by Endorsement No. 5), the Steadfast Policy provides:

> **I.  LIMITS OF INSURANCE**
>
> * * *
>
> **G.** Any limits of insurance provided under a "Self Insured Retention" listed in the Schedule of Underlying Self Insurance, whether or not such insurance is provided according to the terms of a written trust agreement or otherwise, will apply separately to each and every "Claim."
>
> Any aggregate limits of insurance for such "Self Insured Retention" will be considered eroded or exhausted only by actual payment of "Claims" that would be insured by the terms of this policy. Any "Defense Expenses" incurred by any Insured will be the responsibility of the Insured and such "Defense Expenses" will not erode or exhaust the aggregate limits of insurance of the "Self Insured Retention."
>
> * * *
>
> **VI.  RIGHTS AND DUTIES OF THE INSURED**
>
> * * *
>
> **C.  Maintenance of Underlying Insurance**
>
> * * *
>
> **f.** The limits of insurance applicable to any "Self Insured Retention" listed in the

> Schedule of Underlying Self Insurance may not be reduced or exhausted for any reason other than the payment of judgments or settlements which would be covered by the provisions of this policy.

Ex. G; Carroll Aff. at Ex. I.

Finally, the Steadfast Policy contains the following relevant Definitions:

> **X.   DEFINITIONS**
>
> \*   \*   \*
>
> **G.**   "Defense Expenses" means a payment allocated to investigate or defend a specific "Claim" to the extent that payment is not included in the "Underlying Insurance."
>
> \*   \*   \*
>
> **DD.**   "Self Insured Retention" means any amounts listed on the Schedule of Underlying Self Insurance as such. It is the amount the Named Insured must pay for each "Claim" before we will pay "Claims" for which insurance is provided under the applicable Coverage Part, subject to the terms and conditions of this policy.
>
> \*   \*   \*
>
> **GG.**   "Underlying Insurance" means the insurance policies listed in the Schedule of Underlying Insurance, and any "Self Insured Retention" listed in the Schedule of Underlying Self Insurance. "Underlying Insurance" shall not mean any insurance policy or "Self Insured Retention" written to be specifically excess of this policy.

Ex. G.

7

## C. STEADFAST'S RETENTION OF APPELLATE COUNSEL

As noted above, the underlying judgment was appealed to the Pennsylvania Superior Court. During trial in the Underlying Action, the Hospital was represented by Gross McGinley LLP. Carroll Aff. at Ex. J. On appeal, the Hospital continued to be represented by, and paid, its own counsel at Gross McGinley and its counsel even entered his appearance in the appeal. Carroll Aff. at Ex. D.

However, after judgment was entered in the Underlying Action, without having any actual obligation under its policy to do so, Steadfast voluntarily retained its own counsel in connection with the appeal on behalf of the Hospital – the Hangley Firm. Carroll Aff. at Ex. K. As discussed more fully below, when Steadfast retained the Hangley Firm as counsel shortly after the verdict in May 2012, the Hospital's retention under the Steadfast Policy remained unsatisfied and otherwise fully available for settlement/payment. Indeed, the Hospital's SIR was not actually paid until December 2013 when the matter was completely settled. Ex. E. As such, the sole obligation to pay "Defense Expenses" under the Steadfast Policy remained with the Hospital under the SIR.

Nevertheless, when Steadfast advanced the position that any fees or expenses paid by Steadfast to the Hangley Firm eroded the limits of insurance available for settlement under the Steadfast Policy, even before there was any impairment of the $5 Million self-insured retention, Allied World promptly objected to Steadfast's position. Carroll Aff. at Exs. L and M.

Ultimately, after the appellate issues were fully briefed, the Underlying Action was settled for a total of $31.5 Million.[2] At that amount, the Hospital would have paid its $5 Million SIR, Steadfast would have paid its full $20 Million and Allied World would have paid $6.5

---

[2] Notably, the total amount of the jury's award at the time settlement was reached was in excess of $43 Million inclusive of delay damages and post judgment interest.

8

Million. However, because Steadfast paid approximately $691,765 to its own appellate counsel plus another $60,000 for the appeal bond, Steadfast claimed that only $19.25 Million of its $20 Million limit was actually available for the settlement. Carroll Aff. at Ex. N.

As such, Allied World, while expressly denying its obligation to do so, was compelled to fund the difference in the settlement as a result of Steadfast's improper reduction of its policy limit. In an effort to protect the insured as well as to ensure that the Underlying Action was completely resolved, Allied World funded the difference of approximately $750,000, but reserved all rights as against Steadfast. Carroll Aff. at Exs. O and P.

### III. LEGAL ARGUMENT

#### A. SUMMARY JUDGMENT STANDARD AND PENNSYLVANIA INSURANCE POLICY INTERPRETATION PRINCIPLES

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). Here, the parties do not dispute that any genuine issues of material fact exist and, therefore, both parties contend that they are entitled to summary judgment as a matter of law on the insurance coverage issues presented in this matter.

Under Pennsylvania law,[3] it is recognized that the construction and interpretation of an insurance policy is an issue that is appropriately resolved as a matter of law by the court. See,

---
[3] Allied World acknowledges that choice-of-law is a potential issue in this action since the Steadfast Policy appears to have been issued in Tennessee, but the Underlying Action was pending in Pennsylvania and the underlying incident occurred in Pennsylvania. Given that the claims and issues presented in this action relate to the assignment of appellate counsel by Steadfast in Pennsylvania and the damages arise out of the resolution of the Underlying Action, it is Allied World's position that Pennsylvania law applies to the issues presented in this case. Specialty Surfaces Intern., Inc. v. Continental Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010). Furthermore, given the absence of any binding authority on this issue in either Pennsylvania or Tennessee, any choice-of-law dispute is likely irrelevant since the policy interpretation standards under Pennsylvania and Tennessee law are substantially similar.

9

e.g., Liberty Mut. Ins. Co. v. S.G.S. Co., 456 Pa. 94, 97 (1974) ("A declaratory judgment action is particularly appropriate in construing contracts of insurance in order to determine whether an insurer is obligated to defend and/or indemnify one claiming under the policy."); see also Alexander v. CNA Ins. Co., 441 Pa. Super. 507, 509-10 (1995); Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 989 (Pa. Super. Ct. 2009) ("Generally, the proper construction of a policy of insurance is a matter of law which may properly be resolved by a court pursuant to a motion for summary judgment."); Pressley v. Travelers Prop. Cas. Corp., 817 A.2d 1131, 1138 (Pa. Super. Ct. 2003).

"[W]hen the policy language is clear and unambiguous, [a court must] give effect to the language of the contract." Erie Ins. Exchange v. Baker, 972 A.2d 507, 512 (Pa. 2008). "[W]here, however, a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured." Lexington Ins. Co. v. Western Pa. Hosp., 423 F.3d 318, 323 (3d Cir. 2005). Nevertheless, "courts should not . . . distort the meaning of the language or strain to find an ambiguity." Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982).

For all the reasons discussed below, it is Allied World's position that the policy language in the Steadfast Policy is clear and unambiguous, and clearly supports Allied World's contention that the amounts paid by Steadfast to the Hangley Firm did not erode the limit of insurance under the Steadfast Policy.

**B.    BECAUSE THE HOSPITAL'S SIR REMAINED UNPAID AT THE TIME STEADFAST RETAINED AND PAID THE HANGLEY FIRM, THE FEES PAID BY STEADFAST TO THE HANGLEY FIRM DO NOT REDUCE THE LIMITS OF INSURANCE UNDER THE STEADFAST POLICY**

Allied World anticipates that Steadfast will argue that, pursuant to Endorsement No. 4 in the Steadfast Policy, the limit of insurance available under the Steadfast Policy had been reduced on account of any attorney's fees paid to the Hangley Firm in connection with the appeal.

Endorsement No. 4 of the Steadfast Policy provides that Steadfast "will pay, as damages, 'Defense Expenses' and 'Post-Judgment Interest' incurred by us in the investigation or defense of any 'Claim.'" This endorsement further states that "[t]he payment of such 'Defense Expenses' and 'Post-Judgment Interest' shall reduce the Limits of Insurance provided under this policy." However, as set forth below, Steadfast's argument fails to consider several key issues/terms under the Steadfast Policy that are conclusive of the fact that any fees paid by Steadfast to the Hangley Firm were costs solely incurred by Steadfast at Steadfast's own expense.

As established above, the Steadfast Policy was subject to a $5 Million SIR.[4] Importantly, pursuant to Endorsement No. 5 in the Steadfast Policy, "[a]ny 'Defense Expenses' incurred by an Insured [are] the responsibility of the Insured and such 'Defense Expenses' will not erode or exhaust the aggregate limits of the 'Self-Insured Retention.'" This endorsement further provides that "[a]ny aggregate limits of insurance for such 'Self-Insured Retention' will be considered eroded or exhausted *only by actual payment of 'Claims' that would be insured by the terms of this policy*." (Emphasis added.) This endorsement again makes absolutely clear that "[t]he limits of insurance applicable to any Self-Insured Retention listed in the Schedule of Underlying Self Insurance may not be reduced or exhausted for any reason other than the payment of judgments or settlements which would be covered by the provisions of this policy."

Thus, pursuant to Endorsement No. 5, the Hospital's $5 Million SIR could only be satisfied through indemnity payments and any defense costs within the SIR did not erode the $5 Million retention. Here, there is no dispute that, at the time that Steadfast assigned the Hangley Firm to represent the Hospital on appeal, the Hospital's SIR remained unsatisfied and the full $5

---

[4] The Steadfast Policy contains a "Schedule of Underlying Self Insurance" which lists a $5 Million limit of underlying self insurance for professional liability claims/losses.

11

Million was intact and available for settlement.

The Payment of Loss provision in the Steadfast Policy specifically states that "[w]e are obligated to pay under this policy only after . . . the Named Insured has paid the . . . 'Self-Insured Retention.'" "Self-Insured Retention" is defined as "any amounts listed on the Schedule of Underlying Action . . . [and] is the amount the Named Insured must pay for each 'Claim' before we will pay 'Claims' for which insurance is provided under the applicable Coverage Part."

Thus, by its own terms, Steadfast has no obligation under its Policy until the SIR is fully exhausted. As established above, exhaustion of the SIR could only occur through indemnity payments made by the Hospital. Since the Hospital did not actually pay the full $5 Million SIR until December 2013, none of Steadfast's obligations under the Policy were triggered at the time Steadfast retained the Hangley Firm as co-counsel for the Hospital on appeal.

Allied World acknowledges that, if the SIR is not yet satisfied, the Steadfast Policy grants Steadfast "the right, but not the duty, to participate in the investigation, settlement or defense of any . . . 'Claim' against the Insured that in [Steadfast's] judgment may exceed the 'Applicable Underlying Limit.'"[5] There is no dispute that Steadfast had the right to associate in the defense of the Hospital because Steadfast's limit was exposed. However, it was an entirely voluntary assumption by Steadfast; not a mandatory undertaking.

It is important to note that the dispute presented in this matter has nothing to do with the value of the services provided by the Hangley Firm to the Hospital, Steadfast or even Allied World. Rather, the only issue is whether the fees paid to the Hangley Firm by Steadfast eroded the limit of insurance available under the Steadfast Policy. Certainly, if the Hangley Firm had been retained by the Hospital, there is no doubt that the fees paid to the Hangley Firm would

---

[5] "Applicable Underlying Limit" simply means "the total of all available limits of insurance for the applicable 'Underlying Insurance' plus any 'Other Insurance.'"

have been paid under the SIR and, in accordance with Endorsement No. 5, would not have eroded the $5 Million SIR. Indeed, as discussed above, at trial in the Underlying Action and during the appeal, the Hospital continued to be represented by Gross McGinley, and all of Gross McGinley's invoices were properly paid by the Hospital. Those amounts were paid by the Hospital pursuant to its SIR and, per Endorsement No. 5, such expenses did not erode the SIR. Nevertheless, in this situation, Steadfast seeks to argue that it can somehow reduce its policy limit well <u>before</u> the SIR was ever satisfied through a voluntary retention of additional appellate counsel. This position, however, is not supported by the terms and provisions of the Steadfast Policy.

Specifically, although the participation clause does not state that any association in the defense by Steadfast will be at Steadfast's own expense (and, in fact, is otherwise silent on the issue), a closer review of the policy's definition of "Defense Expenses" makes clear that Steadfast could not incur "Defense Expenses" which erode the limit of insurance under the Steadfast Policy because, at the time such expenses were incurred, the payment was included as part of "Underlying Insurance."

As discussed above, per Endorsement No. 4 of the Steadfast Policy, the payment of "Defense Expenses" by Steadfast reduced the Limits of Insurance available under the policy. However, "Defense Expenses" is defined as, in pertinent part, "a payment allocated to investigate or defend a specific 'Claim' *to the extent that payment is not included in 'Underlying Insurance*.'" (Emphasis added.) In turn, "Underlying Insurance" means "any 'Self-Insured Retention' listed in the Schedule of Underlying Self Insurance."

Here, because Steadfast had no duty under the Policy until exhaustion of the SIR and the SIR could only be exhausted through indemnity payments, the duty to defend still remained in

13

"Underlying Insurance" through the Hospital's SIR. As such, pursuant to the definition of "Defense Expenses," Steadfast could not incur any such expenses because any payments for defense costs were still included within the SIR. By definition, it would have been impossible for Steadfast to incur "Defense Expenses" if the loss still remained within the SIR. Rather, in that situation, such costs were incurred at Steadfast's own expense.

Quite simply, as a matter of common sense and fairness, Steadfast could simply "participate in the defense" of every claim under the Policy and effectively spend down its limits of insurance before it ever had any formal obligation to pay defense or indemnity costs under the Policy. It is apparent that the "Defense Expenses" contemplated in Endorsement No. 4 (and which serve to erode the limit of the Policy) are those that are incurred by Steadfast once the SIR has been paid (i.e., they are no longer within the SIR) and Steadfast has an actual obligation to fund such costs under the Policy. Steadfast should not be permitted to reduce its available limit of insurance through the payment of attorney's fees that it was never obligated to pay.

## CONCLUSION

In sum, for all the foregoing reasons, Allied World respectfully requests that this Honorable Court enter Summary Judgment in favor of Allied World and declare that the fees paid by Steadfast to the Hangley Firm, plus the cost of the appeal bond, did not reduce the limit of insurance available under the Steadfast policy and, therefore, Allied World is entitled to damages against Steadfast in the amount of $751,765.00 plus interest.

Respectfully submitted,

Dated: April 24, 2015     /s/ Christopher R. Carroll
Christopher R. Carroll, Esq. (PA ID No. 207906)
James T. Byrnes, Esq. (PA ID No. 208928)
Carroll, McNulty & Kull LLC

Two Liberty Place
50 South 16th Street, Suite 2600
Philadelphia, Pennsylvania 19102
(267) 467-6700
ccarroll@cmk.com
jbyrnes@cmk.com
Counsel for Plaintiff
Allied World Assurance Company, Ltd.