# EXHIBIT G

# Declarations – Health Care Umbrella Liability Policy


**ZURICH**

### STEADFAST INSURANCE COMPANY
Dover, Delaware
Administrative Offices - 1400 American Lane
Schaumburg, Illinois 60196-1056

**Policy Number:** HPC 5346837 04    **Producer:** Aon Risk Services, Inc of TN
**Replaces:** HPC 5346837 03                                501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

In consideration for the payment of premium and subject to all the provisions of this policy, we agree with you to provide the Insurance as stated in this policy.

**Item 1.**    **Named Insured:**    Community Health Systems, Inc.

**Item 2.**    **Mailing Address:**    4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Item 3.**    **Form of Business:**    ☐ Individual    ☐ Partnership    ☐ Joint Venture
☒ Organization (Other than Partnership or Joint Venture)

**Item 4.**    **Business Description:**    For Profit Acute Care Hospital System

**Item 5.**    **"Policy Period":**    From: 06/01/2009 To: 06/01/2010
12:01 a.m. local time at the address shown in Item **2**.

**Item 6.**    **Limits of Insurance:**

| | |
|---|---|
| (A) Specific Loss Limit: | $20,000,000 |
| (B) Other Coverage Aggregate Limit: | $20,000,000 |
| (C) Health Care Professional Liability Aggregate Limit: | $20,000,000 |
| (D) Retained Limit: | $100,000 |

**Item 7.**    **Retroactive Date:**    Per Schedule on File

(The Retroactive Date is applicable only to Claims Made Coverage Parts.)
This Insurance does not apply to any damages as a result of any "Occurrence" or "Medical Incident" which takes place before the Retroactive Date shown above, unless a different Retroactive Date is stated in the applicable Coverage Part.

**Item 8.**    **Minimum Earned Premium:**    $1,575,000

**Item 9.**    **Premium for "Policy Period":**    $6,300,000

**Item 10.**    **Endorsements Effective At Inception:**    Reference Schedule of Forms and Endorsement

*Nancy D. Mueller*

**President**

**Corporate Secretary**

CONFIDENTIAL

AW000007

# Form and Endorsement Schedule



**ZURICH**

**Named Insured:** Community Health Systems, Inc.

| | | | |
|---|---|---|---|
| **Policy Number:** HPC 5346837 04 | **Policy Period:** 06/01/2009   **To:** 06/01/2010 | | |

| Form Name | Form Number | Edition Date | Endorsement No. |
|---|---|---|---|
| Disclosure of Important Information Relating to Terrorism Risk Insurance Act | UGU630CCW | 1/2008 | |
| Health Care Umbrella Liability Policy - Common Policy Provisions | UHCU700BCW | 7/2003 | |
| Health Care Umbrella Liability Policy - Health Care Professional Liability - Claims Made | UHCU703ACW | 4/2003 | |
| Health Care Umbrella Liability Policy - Commercial Liability Coverages A and B | UHCU704BCW | 4/2004 | |
| Health Care Umbrella Liability Policy - Employee Benefit Program Adminstration Liability - Claims Made | UHCU707ACW | 7/2003 | |
| Important Notice | STFGU199ACW | 11/1997 | |
| Unimpaired Underlying Aggregate Limit Endorsement - Non-Concurrency | UHCU740ACW | 7/2003 | 1 |
| Named Insured Extension Endorsement | UHCU730ACW | 4/2003 | 2 |
| Amended Definition of Insured Endorsement | UHCU737ACW | 7/2003 | 3 |
| "Defense Expenses" and "Post-Judgement Interest" Reduce Limits of Insurance Endorsement | UHCU734ACW | 7/2003 | 4 |
| "Defense Expenses" In Addition to Self-Insured Retention Endorsement | UHCU735ACW | 7/2003 | 5 |
| Related "Medical Incident" Endorsement | UHCU838ACW | 5/2007 | 6 |
| Certified Act of Terrorism Exclusion -Coverages A and B | UHCU844ACW | 4/2008 | 7 |
| General Purpose Endorsement | UHCU405ACW | 3/1998 | 8 |
| General Purpose Endorsement | UHCU405ACW | 3/1998 | 9 |
| General Purpose Endorsement | UHCU405ACW | 3/1998 | 10 |
| General Purpose Endorsement | UHCU405ACW | 3/1998 | 11 |
| General Purpose Endorsement | UHCU405ACW | 3/1998 | 12 |
| General Purpose Endorsement | UHCU405ACW | 3/1998 | 13 |
| General Purpose Endorsement | UHCU405ACW | 3/1998 | 14 |

CONFIDENTIAL

AW000008

# Schedule of Underlying Self Insurance



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| BPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Insured Name and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

| TYPE OF COVERAGE | COVERAGE PERIOD | LIMITS OF INSURANCE | |
|---|---|---|---|
| Professional Liability | Coverage Period: 06/01/2009 - 06/01/2010 | Each Medical Incident Limit: | $5,000,000 |
| | | Aggregate Limit: | Not Applicable |
| Commercial General Liability | Coverage Period: 06/01/2009 - 06/01/2010 | Each Occurrence Limit: | $5,000,000 |
| | | Personal Injury and Advertising Injury Limit: | $5,000,000 |
| | | Products-Completed Operations Aggregate Limit: | Not Applicable |
| | | General Aggregate Limit: | Not Applicable |
| Employee Benefits Liability | Coverage Period: 06/01/2009 - 06/01/2010 | Each Employee: | $5,000,000 |
| | | Aggregate Limit: | Not Applicable |

CONFIDENTIAL

AW000009

# Health Care Umbrella Liability Policy
COMMON POLICY PROVISIONS



**ZURICH**

**THIS POLICY MAY CONTAIN BOTH CLAIMS MADE AND OCCURRENCE COVERAGES. ALSO, VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND WHAT IS NOT COVERED.**

**NOTICE: THIS POLICY IS INCOMPLETE UNLESS THE DECLARATIONS, SCHEDULE OF UNDERLYING INSURANCE OR SCHEDULE OF UNDERLYING SELF INSURANCE AND AT LEAST ONE COVERAGE PART ARE ATTACHED.**

This policy has been issued in reliance upon the statements in the Declarations and in the application submitted for this insurance. Wherever used in this policy, the words "You" and "Your" refer to the Named Insured. The words Named Insured shall mean any person or organization shown in the Declarations. The word "Insured" means any person or organization qualifying as such under the WHO IS AN INSURED section of any attached Coverage Part. The words "We", "Us", and "Our" refer to the Company providing this insurance.

Other words and phrases in this policy that appear in quotation marks have special meanings. Refer to Section **X** – DEFINITIONS of the Common Policy Provisions as well as the ADDITIONAL DEFINITIONS Section within any attached Coverage Part.

The Common Policy Provisions listed below shall apply to all attached Coverage Parts. Except for these Common Policy Provisions or unless stated to the contrary in any Coverage Part, the provisions of each Coverage Part apply only to that Coverage Part. If any provision in the Common Policy Provisions is inconsistent or in conflict with the provisions of any Coverage Part, the provisions of such Coverage Part shall apply. In the event that a "Self Insured Retention" is listed on the Schedule of Underlying Self Insurance, our coverage for any "Claim" excess of the "Self Insured Retention" shall apply only if such "Claim" is otherwise covered by the terms and conditions of this policy.

In consideration of the payment of premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy, we agree with you to provide coverage as follows:

I. **LIMITS OF INSURANCE**

    **A.** Subject to all the applicable Coverage Parts, the Limits of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of Coverage Parts attached to this policy, Insureds, "Claims" made, or persons or organizations making "Claims".

    **B.** Subject to the Other Coverage Aggregate Limit or the Health Care Professional Liability Aggregate Limit, the Specific Loss Limit shown in **Item 6(A)** of the Declarations is the most we will pay for all damages because of:

        1. Any one "Occurrence" for which insurance is provided under an attached Coverage Part; or

        2. Any one "Medical Incident" for which insurance is provided under an attached Coverage Part;

    If a single event results in a "Claim" to which multiple Coverage Parts apply, our total liability for such single event shall not exceed the amount stated as the Specific Loss Limit.

    **C.** The Other Coverage Aggregate Limit shown in **Item 6(B)** of the Declarations is the most we will pay for the sum of all damages because of all "Occurrences" for which insurance is provided under this policy, except for damages covered under the Health Care Professional Liability Coverage Part.

    **D.** The Health Care Professional Liability Aggregate Limit shown in **Item 6(C)** of the Declarations is the most we will pay for the sum of all damages because of all injury caused by all "Medical Incidents" for which insurance is provided under this policy.

    **E.** Coverage only applies to:

        1. "Claims" arising out of "Occurrences" or "Medical Incidents" that take place on or after the Retroactive Date as stated in Item 7 of the Declarations, but before the end of the "Policy Period" and where the "Claims" are first made during the "Policy Period" or any Extended Reporting Period provided by the policy for an attached Claims Made Coverage Part; or

Includes copyrighted material of Insurance Services Office, with its permission

**CONFIDENTIAL**

AW000010

2. "Claims" arising out of "Occurrences" or "Medical Incidents" that take place during the "Policy Period" for insurance provided under any other Coverage Part.

3. If any limit of insurance provided by "Underlying Insurance" is reduced due to payment of covered "Claims", subject to our policy's terms and conditions, our Limits of Insurance will apply excess of the reduced limit of insurance provided by "Underlying Insurance".

4. If any limits of insurance provided by "Underlying Insurance" are exhausted due to payment of covered "Claims", subject to our policy's terms and conditions, our Limits of Insurance will apply:

   a. In place of the limits of insurance provided by "Underlying Insurance"; and

   b. Excess of the "Retained Limit" shown in **Item 6(D)** of the Declarations.

F. If any "Underlying Insurance" does not apply to any "Claim" otherwise covered by this policy, subject to our policy's terms and conditions, our Limits of Insurance will apply excess of the "Retained Limit".

G. Any limits of insurance provided under a "Self Insured Retention" listed in the Schedule of Underlying Self Insurance, whether or not such insurance is provided according to the terms of a written trust agreement or otherwise, will apply separately to each and every "Claim". Any aggregate limits of insurance for such "Self Insured Retention" will be considered eroded or exhausted only by actual payment of "Claims" that would be insured by the terms of this policy. Any "Defense Expenses" incurred by any Insured will be considered part of the limits of insurance under such "Self Insured Retention" and such "Defense Expenses" will erode or exhaust the aggregate limits of insurance of the "Self Insured Retention".

H. Any amount paid for damages arising out of an "Occurrence" or "Medical Incident" will reduce the amount of the applicable aggregate Limit of Insurance available for payment of damages arising out of any other "Occurrence" or "Medical Incident".

I. If the applicable aggregate Limit of Insurance has been reduced by payment of damages to an amount that is less than the Specific Loss Limit stated in **Item 6(A)** of the Declarations, the remaining aggregate Limit of Insurance is the most that will be available for payment of damages arising out of any other "Occurrences" or "Medical Incidents".

J. If we are prevented by law from paying on behalf of the Insured, then where permitted by law, we will indemnify the Insured for those sums in excess of the "Applicable Underlying Limit".

## II. WHEN A CLAIM IS FIRST MADE – CLAIMS MADE COVERAGE

As respects insurance provided under an attached Claims Made coverage part, a "Claim" will be considered to be first made against the Insured on the date the "Claim" is reported to us in writing by an Insured in accordance with the Common Policy Provisions, Section **VI** – RIGHTS AND DUTIES OF THE INSURED, Paragraph **D**.

## III. DEFENSE AND EXPENSES FOR CLAIMS

A. We shall have the right and duty to investigate, defend and settle any "Claim" to which this insurance applies, but only if no other insurer is obligated to investigate, defend and settle such "Claim" and if:

   1. Any "Underlying Insurance" or "Other Insurance" has been exhausted by the payment of "Claims" to which this policy applies; or

   2. Damages are sought for an "Occurrence", "Medical Incident" or "Claim" which is covered by this policy but for which no "Underlying Insurance" or "Other Insurance" applies.

   We may, at our discretion, investigate any "Occurrence" or "Medical Incident" and settle any "Claims" arising out of that "Occurrence" or "Medical Incident".

B. The first Named Insured will promptly reimburse us for any amount within the "Retained Limit" paid by us on behalf of any Insured as a result of investigation, defense or settlement of such "Claims".

C. If "Underlying Insurance" or any "Other Insurance" exists, we shall have the right, but not the duty, to participate in the investigation, settlement or defense of any "Occurrence", "Medical Incident" or "Claim" against the Insured that in our judgment may exceed that "Applicable Underlying Limit".

D. We will pay "Defense Expenses" and "Post-judgment Interest" incurred by us in the investigation or defense of any "Claim". The payment of such "Defense Expenses" and "Post-judgment Interest" shall not reduce the Limits of Insurance provided under this policy.

E. Our right and duty to defend an Insured against any "Claim" ends after we have exhausted the applicable Limit of Insurance as stated in the Declarations, in the payment of judgments or settlements.

F. You shall not, except at your own expense, voluntarily make any payment, assume any obligation, or incur any expense, without our written consent.

G. No Insured shall do anything to prejudice our rights under this policy, nor shall any Insured settle any "Claim" for an amount in excess of the "Applicable Underlying Limit" or "Retained Limit" or within the "Retained Limit" without our written consent.

H. If we are prevented by law from carrying out this provision, then where permitted by law, we will indemnify the Insured for any "Defense Expenses" incurred with our written consent.

## IV. SETTLEMENT OF CLAIMS – SELF INSURED RETENTION

A. We shall obtain your consent prior to entering into any settlement of any "Claim" which is equal to or less than the applicable "Self Insured Retention" amount. If, however, the Insured refuses to consent to any settlement recommended by us within the "Self Insured Retention" amount and elect to contest the "Claim" or continue with any legal proceedings in connection with such "Claim", our liability for that "Claim" shall not exceed the amount determined by subtracting the "Self Insured Retention" amount from the amount which the "Claim" could have been settled, including reasonable "Defense Expenses" incurred to the date of such refusal. We shall have no obligation with respect to such "Claim" if that difference is zero or negative.

B. With respect to any "Claim" to which this insurance applies and that in our opinion may exceed the applicable "Self Insured Retention" amount, we have the right to settle such "Claim" and make payment on the Insured's behalf, both within and excess of the applicable "Self Insured Retention" as we deem appropriate and without the Insured's consent. The first Named Insured will promptly reimburse us for any amount within the "Self Insured Retention" paid by us on behalf of any Insured as a result of the settlement of such "Claims".

C. If during the "Policy Period", any "Self Insured Retention" has been exhausted by the payment of "Claims" to which this policy applies and "Defense Expenses" associated with those "Claims", we shall at that time have the right to settle existing and new "Claims" which would have been covered by the exhausted "Self Insured Retention" as we deem appropriate and without the Insured's consent.

## V. EXCLUSIONS

The insurance provided by this policy does not apply to any liability, damage, loss, cost or expense:

A. **Acts Deemed Uninsurable by Law**

Arising from any judgments or awards that arise out of acts that are deemed uninsurable by law.

B. **Asbestos**

Arising out of any:

1. Liability or obligation of any Insured to indemnify or contribute on behalf of any party because of injury or damage; or

2. Obligation to investigate, defend or settle any "Claim" against any Insured that alleges injury or damage

arising out of, resulting from or contributed to by the manufacture, mining, use, sale, installation, removal distribution, transportation of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Arising out of any intentional, dishonest, fraudulent, criminal or malicious act committed by any Insured, including the violation of any law or statute.

D. **Employment-Related Practices**

1. Based upon, attributed to, related to or in any manner arising out of any actual or alleged:

   a. Refusal to employ a person;

   b. Termination of a person's employment; or

   c. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, false imprisonment, invasion of rights to privacy, infliction of emotional distress, defamation, harassment, humiliation or discrimination directed at a person; or

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000012

2. The spouse, child, parent, brother or sister of a person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs 1a, 1b, or 1c above is directed.

This exclusion applies:

1. Whether the Insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**E. ERISA**

Arising out of any violation or alleged violation of the Employee Retirement Income Security Act of 1974 or any amendment or addition thereto or similar provisions of any federal, state or local law.

**F. Nuclear Energy Liability**

1. With respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. Resulting from the "Hazardous Properties" of "Nuclear Material" and with respect to which:

    a. Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    b. Any Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

3. Resulting from "Hazardous Properties" of "Nuclear Material", if:

    a. The "Nuclear Material":

        (1) Is at any "Nuclear Facility" owned by, or operated by or on behalf of, any Insured; or

        (2) Has been discharged or dispersed therefrom;

    b. The "Nuclear Material" is contained in "Spent Fuel" or "Waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of any Insured; or

    c. The liability, damage, loss, cost or expense arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "Nuclear Facility".

As used in this exclusion:

1. "Hazardous Properties" includes radioactive, toxic or explosive properties.

2. "Nuclear Material" means "Source Material", "Special Nuclear Material" or "By-Product Material".

3. "Source Material", "Special Nuclear Material", and "By-Product Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4. "Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "Nuclear Reactor".

5. "Waste" means any waste material:

    a. Containing "By-Product Material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "Source Material" content; and

    b. Resulting from the operation by any person or organization of any "Nuclear Facility" included under the first two paragraphs of the definition of "Nuclear Facility".

6. "Nuclear Facility" means:

    a. Any "Nuclear Reactor";

    b. Any equipment or device designed or used for:

        (1) Separating the isotopes of uranium or plutonium;

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000013

(2) Processing or utilizing "Spent Fuel"; or

(3) Handling, processing or packaging "Waste";

    c.   Any equipment or device used for the processing, fabricating or alloying of "Special Nuclear Material" if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    d.   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "Waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

    7.   "Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

### G. Return of Fees

Arising out of any request for a return or withdrawal of fees, commission or charges.

### H. Sexual Misconduct

    1.   Arising out of sexual intimacy, sexual molestation, sexual harassment, sexual exploitation, or sexual assault of any kind.

    2.   Arising out of the negligent employment, investigation, supervision, reporting to proper authorities, or failure to so report, or retention of a person for whom an Insured is or ever was legally responsible and whose conduct would be excluded by Paragraph H1. However, we agree to defend any "Claim" arising from the conditions described in **H2**, subject to the terms of this policy until the allegations described in **H2** are proven by a final adjudication. If the final adjudication is against an Insured, the first "Named Insured" upon our written demand agrees to reimburse us within thirty (30) days for all "Defense Expenses" incurred in defending such "Claim";

### I. Taxes, Fines or Penalties

Arising out of any taxes, fines or penalties imposed by law.

### J. Violation of An Antitrust Law

Arising out of the violation of an antitrust law.

### K. War or Military Action

Arising directly or indirectly out of:

    1.   War, including undeclared or civil war; or

    2.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    3.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to injury or damage.

### L. Workers' Compensation And Similar Laws

Arising out of any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## VI. RIGHTS AND DUTIES OF THE INSURED

### A. Assistance and Cooperation

    1.   All Insureds shall assist and cooperate with us in the investigation, defense and settlement of all "Claims". Such assistance and cooperation shall include, but not be limited to:

        a.   Authorizing the release of records and other information to us;

        b.   Obtaining the location and cooperation of witnesses;

        c.   Securing and giving evidence;

        d.   Cooperating with defense counsel; and

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000014

    **e.** Attending depositions, hearings and trials.

  **2.** All Insureds shall also:

    **a.** Cooperate with all underlying insurers;

    **b.** Comply with the provisions of all "Underlying Insurance";

    **c.** Not make any admission of liability;

    **d.** Pursue all rights of contribution or indemnification against any person or organization who may be liable to any Insured because of any injury or damage with respect to which coverage is provided under this policy or any "Underlying Insurance";

    **e.** Allow us to conduct claims audits of any of your files at our discretion.

**B. Loss Information**

As respects any "Underlying Insurance", you shall provide quarterly loss reports listing all closed and outstanding "Occurrences", "Medical Incidents" or "Claims". Such reports shall identify the date of loss, the date of first notice of the "Occurrence", "Medical Incident" or "Claim" to any Insured, a description of loss, the indemnity reserve amount, the "Defense Expense" reserve amount, the indemnity paid amount, and the "Defense Expense" paid amount. These quarterly reports should be sent to:

**Zurich North America**

**Specialties Healthcare Claims Department**

**P.O. Box 307010**

**Jamaica, NY 11430-7010**

Your obligation to provide quarterly loss reports will continue until all "Occurrences", "Medical Incidents" or "Claims" for the "Policy Period" are closed or settled. The information included in the quarterly loss reports shall not constitute notice of "Occurrences", "Medical Incidents" or "Claims". Providing quarterly loss runs does not negate or fulfill your obligations stated in the Common Policy Provisions, Section **VI – RIGHTS AND DUTIES OF THE INSURED,** Paragraph **D.**

**C. Maintenance of Underlying Insurance**

  **1.** As long as our policy is in effect:

    **a.** The policies listed in the Schedule of Underlying Insurance must continuously be kept in full force and effect;

    **b.** The provisions of the policies listed in the Schedule of Underlying Insurance must not materially change during this "Policy Period";

    **c.** The policies listed in the Schedule of Underlying Insurance may not be cancelled or nonrenewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any policy listed in the Schedule of Underlying Insurance;

    **d.** The renewals or replacements of the policies listed in the Schedule of Underlying Insurance must not be more restrictive in coverage than the current policies;

    **e.** The limits of insurance applicable to the policies listed in the Schedule of Underlying Insurance may not be reduced or exhausted for any reason other than the payment of judgments or settlements which would be covered by the provisions of this policy;

    **f.** The limits of insurance applicable to any "Self Insured Retention" listed in the Schedule of Underlying Self Insurance may not be reduced or exhausted for any reason other than the payment of judgments or settlements which would be covered by the provisions of this policy and "Defense Expenses" associated with those payments;

    **g.** Insurance will not be procured for all or part of any "Self Insured Retention" listed in the Schedule of Underlying Self Insurance.

  **2.** You must notify us in writing within thirty (30) days if any of the following occur during the "Policy Period":

    **a.** There are any changes in the provisions of the policies listed in the Schedule of Underlying Insurance, or any renewals or replacements thereof;

Includes copyrighted material of Insurance Services Office, with its permission

    b.    Any of the policies listed in the Schedule of Underlying Insurance is cancelled or nonrenewed by you or an insurance company cancels or declines to renew any policy listed in the Schedule of Underlying Insurance;

    c.    The limits of insurance applicable to the policies listed in the Schedule of Underlying Insurance are less than the limits of insurance shown in the Schedule of Underlying Insurance; or

    d.    Insurance is procured for all or part of any "Self Insured Retention" listed in the Schedule of Underlying Self Insurance.

In the event of any changes as described in paragraphs **2a, 2b, 2c** or **2d**, we reserve the right to cancel, nonrenew, modify the provisions of or change the premium for this policy.

3.    If the "Underlying Insurance" or any renewals or replacements thereof:

    a.    Are not kept in full force and effect;

    b.    Contain provisions more restrictive than the provisions originally applicable to the policies listed in the Schedule of Insurance or Schedule of Underlying Self Insurance;

    c.    Have limits of insurance of a lesser amount than those listed in the Schedule of Underlying Insurance or Schedule of Underlying Self Insurance;

    d.    Are unavailable or uncollectible due to the bankruptcy, insolvency, liquidation of any Insured or insurer; or

    e.    Are unavailable or uncollectible due to your failure to comply with the provisions of such policies;

then our policy will still apply in the same manner as if the "Underlying Insurance" contained the original, less restrictive provisions, were still in full force and effect, and fully collectible.

## D.  Notice Provisions

You must give prompt written notice to us of any "Occurrence", "Medical Incident", or "Claim" which any Insured or any representative of any Insured evaluates as having:

1.    A settlement or judgment value equal to or exceeding twenty five percent (25%) of the "Applicable Underlying Limit"; or

2.    A reserve amount equal to or exceeding twenty five percent (25%) of the "Applicable Underlying Limit"; or

3.    A demand amount equal to or exceeding twenty five percent (25%) of the "Applicable Underlying Limit"

The notice shall include:

1.    The time, date and place of the "Occurrence", "Medical Incident" or "Claim";

2.    A description of the "Occurrence", "Medical Incident" or "Claim";

3.    The injury or damage which has resulted or may result from such "Occurrence", "Medical Incident" or "Claim";

4.    How and when you first became aware of such "Occurrence", "Medical Incident" or "Claim";

5.    The names, addresses and ages of the injured parties; and

6.    The names and addresses of any witnesses.

You must immediately send us copies of any demands, notices, summonses, legal papers or any other related correspondence received by any Insured in connection with a "Claim".

As respects any Claims Made Coverage Part attached to this policy, written notice of an "Occurrence", or "Medical Incident" must be provided to us during the "Policy Period". Written notice of "Claims" must be provided to us during the "Policy Period" or, if applicable, during an Extended Reporting Period.

Reports made by you to us as part of engineering, risk management or loss control services shall not be considered notice of an "Occurrence", "Medical Incident" or "Claim".

Any audit by us or our representative of any "Occurrences", "Medical Incidents" or "Claims" shall not be considered notice of an "Occurrence", "Medical Incident" or "Claim".

CONFIDENTIAL

AW000016

All "Occurrences", "Medical Incidents" or "Claims" are to be reported to:

**Zurich North America**

**Specialties Healthcare Claims Department**

**P.O. Box 307010**

**Jamaica, NY 11430-7010**

**E. Premium**

1. The first Named Insured is responsible for payment of all premiums and will be the payee of any return premium.

2. We reserve the right to adjust the premium charged for this policy if any of the provisions of this policy are changed.

**F. Representations**

By acceptance of this policy, the Named Insured agrees:

1. That the information shown in the Declarations, Schedule of Underlying Insurance and Schedule of Underlying Self Insurance of this policy is accurate and complete; and

2. That the statements in the application and its attachments and any materials submitted therewith, are true and correct representations, that each shall be deemed material, and that this policy is issued in reliance upon the truth of such representations; and

This policy will be void if you provide us with false or incorrect representations with the intent to mislead or defraud us or any of our representatives regarding any matter concerning this insurance, either before or after a "Claim".

**G. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each Insured against whom "Claim" is made or "Suit" is brought.

**H. Sole Agent**

If there are more than one of you named in this policy, the first Named Insured shall act on behalf of all Insureds for all purposes, including but not limited to:

1. The payment or return of premium;

2. Receipt and acceptance of any endorsement issued to form a part of this policy;

3. Giving and receiving notice of cancellation or nonrenewal; and

4. Reimbursement to us of any "Retained Limit" or "Self Insured Retention" amount advanced by us.

**I. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our prior written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**VII. CONDITIONS**

**A. Appeals**

We have the right, but not the duty, to appeal any judgment brought against any Insured if:

1. the judgment is in excess of the "Applicable Underlying Limit"; and

2. neither any Insured nor any underlying insurer elects to appeal.

If we appeal, we will pay the costs of the appeal plus any incidental interest, but in no event will we pay out more than is provided by our applicable Limit of Insurance plus the costs and interest of the appeal.

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

**B. Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this policy.

**C. Changes**

This policy embodies all agreements existing between you and any of us or any of our employees or representatives, in connection with this policy. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy only with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**D. Conformity to Statute**

Any part of this policy that conflicts with state law is automatically changed to conform to that law.

**E. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time.

**F. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **F1** and **F2** apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**G. Legal Action Against Us**

No action shall lie against us unless there has been full compliance with all of the terms of this policy, and the Insured's liability and the amount of the obligation to pay has been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, with the claimant or the claimant's legal representatives and with our written approval.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy only to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join us as a party to any action against the Insured to determine the Insured's liability, nor shall we be impleaded by the Insured or any legal representatives thereof.

**H. Other Insurance**

1. If any "Other Insurance" is available to any Insured with respect to a loss covered by this policy, and such insurance is afforded under a policy or Extended Reporting Period issued by a past, present or future member company of Zurich Financial Services, then the maximum Limits of Insurance under all policies shall not exceed the highest remaining applicable Limit of Insurance under any one policy.

2. If any "Other Insurance" is available to any Insured with respect to a loss covered by this policy, and such insurance is not afforded under a policy or Extended Reporting Period issued by a past, present or future member company of Zurich Financial Services, then this insurance will be excess over such insurance even if such "Other Insurance" is stated to be primary, excess, contingent, or otherwise. We will pay only our share of a "Claim", if any, that exceeds the sum of:

   a. The "Applicable Underlying Limit" or "Retained Limit";

   b. The total amount that all such "Other Insurance" would pay for the loss in the absence of this insurance; and

   c. The total of all deductible and self insured amounts under all such "Other Insurance".

CONFIDENTIAL

AW000018

This condition shall not apply if such "Other Insurance" is written to be specifically excess of this policy.

**I. Our Right to Recover Payment**

If we make a payment under this insurance, any and all Insureds will assist us and the applicable underlying insurer in recovering what we paid by using any and all Insured's rights of recovery. Reimbursement will be made in the following order:

1. First, to any interest (including any Insured) who has paid any amount in excess of the Limits of Insurance;

2. Next, to us; and

3. Then to any interest (including any Insured or underlying insurer) as are entitled to claim the remainder, if any.

A different order may apply if agreed upon by all interests. Expenses incurred in the process of recovery will be divided among all interests according to the ratio of their respective recoveries.

**J. Payment of Loss**

1. We are obligated to pay under this policy only after;

   a. The underlying insurers have paid their Limits of Insurance or the Named Insured has paid the "Retained Limit" or "Self Insured Retention", as applicable;

   b. The underlying insurers and all Insureds have complied with their obligations to defend and pay "Defense Expenses"; and

   c. Final judgment is rendered against any Insured after trial, or a written settlement is agreed upon by you, the claimants, any underlying insurers and us.

2. After we have been notified that the amount of damages has been determined by:

   a. A final judgment rendered against any Insured after trial; or

   b. A written settlement agreed upon by you, the claimants, any underlying insurers and us;

   we will promptly pay on behalf of the Insured the amount of damages covered under the provisions of this policy.

3. The first Named Insured will promptly reimburse us for any amount within the "Retained Limit" paid by us.

**K. Policy Territory**

This policy will apply anywhere in the world, provided "Claims" are reported to us and "Suit" is brought within the United States of America, its territories and possessions, Puerto Rico or Canada.

**L. "Self Insured Retention" – Your Failure to Respond**

In the event of your refusal to respond to your obligations for the payment of any "Self Insured Retention" for any reason, we shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of any "Self Insured Retention".

**M. Transfer of Rights of Recovery Against Others to Us**

If the Insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring suit or transfer those rights to us and help us enforce them.

**VIII. EXTENDED REPORTING PERIOD**

As respect any Claims Made Coverage Part attached to this policy:

**A.** You will have the right to purchase an Extended Reporting Period as described below, if:

1. The Claims Made Coverage Part is canceled or nonrenewed for any reason other than fraud or nonpayment of premium. Our offer to renew any Claims Made Coverage Part with terms, conditions or premiums that differ from the expiring Coverage Part shall not constitute a nonrenewal of the Coverage Part; or

2. We renew or replace the Claims Made Coverage Part with insurance that:

   a. Has a Retroactive Date later than the date shown on the Declarations; or

   b. Does not apply to injury on a Claims Made basis.

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000019

B. If you wish to purchase an Extended Reporting Period, you must:

   1. Obtain all available Extended Reporting Periods for all applicable "Underlying Insurance";

   2. Give us written notice within thirty (30) days of the end of the "Policy Period" or the date of the termination of the applicable Coverage Part, whichever comes first; and

   3. Pay to us promptly when due all such premiums as required by us.

   If you fail to comply with any of the three (3) provisions stated above, you will not at a later date be entitled to purchase an Extended Reporting Period.

C. An Extended Reporting Period extends the period of time during which a "Claim" can be first made to us in writing. Such "Claim" must arise out of a "Medical Incident" or "Occurrence" that took place on or after the Retroactive Date but before the end of the "Policy Period" or the date of termination of the applicable Coverage Part. Any such "Claim" first made during an Extended Reporting Period will be deemed to have been made on the last day of the "Policy Period". The Extended Reporting Period does not extend the "Policy Period", change the scope of coverage provided under any Claims Made Coverage Part, nor reinstate or increase the Limit(s) of Insurance available under this policy.

D. The premium for the Extended Reporting Period will be based on the rules and rating plans we are using on the day the Extended Reporting Period begins. The Extended Reporting Period will take effect only after you have paid any additional premium required.

E. Once an Extended Reporting Period is effective, it cannot be canceled and we shall not return any part of any premium paid to us for such Extended Reporting Period for any reason whatsoever. However, we will return all premium paid to us for any Extended Reporting Period that has not become effective because all available Extended Reporting Periods for all applicable "Underlying Insurance" were not obtained by you.

F. The insurance provided under the Extended Reporting Period Endorsement will be excess over any "Other Insurance", whether primary, excess, contingent or on any other basis, whenever such other valid and collectible insurance is in effect subsequent to the effective date of any such Extended Reporting Period Endorsement. Common Policy Provisions, Section **VII** – CONDITIONS, Paragraph H will be amended accordingly by the Extended Reporting Period Endorsement.

## IX. CANCELLATION AND NONRENEWAL

### A. Cancellation

   1. The first Named Insured shown in **Item 1** of the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

      b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

   3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   4. Notice of cancellation will state the effective date of cancellation. The "Policy Period" will end on that date.

   5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be the customary short-rate calculation subject to the Minimum Earned Premium stated in **Item 8** of the Declarations. The cancellation will be effective even if we have not made or offered a refund.

   6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Mid-term Cancellation

In the event of a midterm cancellation of this policy, any "Applicable Underlying Limit" aggregate amount listed in the Schedule of Underlying Insurance or Schedule of Underlying Self Insurance is not subject to any pro rata reduction. Any "Applicable Underlying Limit" aggregate amount will apply as if the policy term had not been shortened.

### C. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than thirty (30) days before the expiration date.

Includes copyrighted material of Insurance Services Office, with its permission

If notice is mailed, proof of mailing will be sufficient proof of notice.

## X. DEFINITIONS

A. "Administration" means

1. Providing information to "Employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "Employee Benefit Programs";

2. Handling records in connection with the "Employee Benefit Program"; or

3. Effecting, continuing or terminating any "Employees" participation in any benefit included in the "Employee Benefit Program".

However, "Administration" does not include handling payroll deductions.

B. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "Advertisement".

C. "Applicable Underlying Limit" means the total of all available limits of insurance for the applicable "Underlying Insurance" plus any "Other Insurance".

For the purposes of determining the "Applicable Underlying Limit" the limits of insurance for any "Underlying Insurance" or "Other Insurance" will apply even if the insurer providing the "Underlying Insurance" or "Other Insurance" claims the Insured failed to comply with any condition of the policy; or that insurer becomes bankrupt or insolvent.

Any aggregate limit of insurance provided by an insurance policy within the "Applicable Underlying Limit" shall be considered eroded or exhausted only by the actual payment of "Claims" that would be insured by the provisions of this policy.

Any "Self Insured Retention" aggregate amount within the "Applicable Underlying Limit" shall be considered eroded or exhausted only by the actual payment of "Claims" that would be insured by the provisions of this policy or "Defense Expenses" incurred in defending those "Claims".

D. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "Auto" does not include "Mobile Equipment".

E. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

F. "Claim" means a "Suit" or demand for damages to which this insurance applies.

G. "Defense Expenses" means a payment allocated to investigate or defend a specific "Claim" to the extent that payment is not included in the "Underlying Insurance". "Defense Expenses" includes:

1. Attorney fees and other litigation expenses incurred in the defense of a "Claim";

2. Reasonable attorney fees or other expenses incurred by the Insured at our request to assist us in the investigation or defense of a "Claim" or suit, including reimbursement for loss of earnings up to $100 a day because of the Insured's attendance at hearings or trials at our request;

3. Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Coverage **A** applies under the Commercial Liability – Coverages **A** and **B** Coverage Part of this policy (if attached). We do not have to furnish these bonds;

4. The cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. We do not have to furnish these bonds;

5. "Pre-judgment Interest".

"Defense Expenses" do not include:

1. Salaries and expenses of our employees or any Insured's "Employees" other than that portion of those fees, salaries and expenses of attorneys employed by us allocated to a specific "Claim".

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000021

2. Fees and expenses of independent investigators or adjusters hired by any Insured.

3. Plaintiff attorney's fees and costs.

4. "Post-judgment Interest".

H. "Electronic Data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I. "Employee" means any person employed and compensated by you. "Employee" includes a "Leased Worker". "Employee" does not include a "Temporary Worker".

"Employee" also means a person formerly employed by you, on leave of absence or disabled, or retired, but only as respects the "Administration" of your "Employee Benefit Program".

J. "Employee Benefit Program" means a program providing some or all of the following benefits to "Employees":

1. Group life insurance; group accident or health insurance; dental, vision and hearing plans and flexible spending accounts, provided that no one other than an "Employee" may subscribe to such benefits and such benefits are made generally available to those "Employees" who satisfy the plan's eligibility requirements;

2. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "Employee" may subscribe to such benefits and such benefits are generally made available to all "Employees" who are eligible under the plan for such benefits;

3. Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

4. Vacation plans, including buy and sell programs; leave of absence programs, including military leave, maternity, family and civil leave; tuition assistance plans; transportation and health club subsidies.

K. "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

L. "Impaired Property" means tangible property, other than "Your Product" or "Your Work", that cannot be used or is less useful because:

1. It incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

2. Your fulfilling the terms of the contract or agreement.

M. "Insured Contract" means:

1. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured Contract";

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. An elevator maintenance agreement;

6. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph 6 does not include that part of any contract or agreement:

CONFIDENTIAL

AW000022

    a.   That indemnifies a railroad for "Bodily Injury" or "Property Damage" arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    b.   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (1)  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        (2)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    c.   Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in b(1) and b(2) above and supervisory, inspection, architectural or engineering activities.

N.   "Leased Worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased Worker" does not include a "Temporary Worker".

O.   "Loading or Unloading" means the handling of property:

    1.   After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "Auto";

    2.   While it is in or on an aircraft, watercraft or "Auto"; or

    3.   While it is being moved from an aircraft, watercraft or "Auto" to the place where it is finally delivered;

but "Loading or Unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "Auto".

P.   "Medical Incident" means an actual or alleged act, error or omission in furnishing or failing to furnish "Professional Medical Services", or a series of related actual or alleged acts, errors or omissions in furnishing or failing to furnish "Professional Medical Services".

Q.   "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    1.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    2.   Vehicles maintained for use solely on or next to premises you own or rent;

    3.   Vehicles that travel on crawler treads;

    4.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        a.   Power cranes, shovels, loaders, diggers or drills; or

        b.   Road construction or resurfacing equipment such as graders, scrapers or rollers;

    5.   Vehicles not described in Q1, Q2, Q3 or Q4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        a.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        b.   Cherry pickers and similar devices used to raise or lower workers;

    6.   Vehicles not described in Q1, Q2, Q3 or Q4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "Mobile Equipment" but will be considered "Autos":

    a.   Equipment designed primarily for:

        (1)  Snow removal;

        (2)  Road maintenance, but not construction or resurfacing; or

        (3)  Street cleaning;

    b.   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000023

**R.** "Occurrence" means:

1. With respect to "Bodily Injury" or "Property Damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2. With respect to "Personal and Advertising Injury", a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same "Occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

**S.** "Other Insurance" means a policy of insurance providing coverage that this policy also provides.

"Other Insurance" includes any type of self insurance or other mechanism by which an Insured arranges for funding of legal liability.

"Other Insurance" does not include "Underlying Insurance" or a policy of insurance specifically purchased to be excess of this policy.

**T.** "Personal and Advertising Injury" means injury, including consequential "Bodily Injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into or invasion of the right of private occupation of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "Advertisement";

7. The use of another's copyright, trade dress or slogan in your "Advertisement"; or

8. Infringing upon another's copyright, trade dress or slogan in your "Advertisement"

**U.** "Policy Period" means the period of coverage that begins at 12:01 a.m. on the inception date shown in **Item 5** of the Declarations and ends at 12:01 a.m. on the expiration date shown in **Item 5** of the Declarations or any shorter period resulting from a termination of the policy.

**V.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**W.** "Post-judgment Interest" means all interest on the full amount of the judgment that accrues after the entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limits of Insurance.

**X.** "Pre-judgment Interest" means interest on any judgement against the Insured awarded for the period of time prior to the entry of the judgment.

**Y.** "Products and Completed Operations Hazard":

1. Includes all "Bodily Injury" and "Property Damage" occurring away from premises you own or rent and arising out of "Your Product" or "Your Work" except:

    a. Products that are still in your physical possession; or

    b. Work that has not yet been completed or abandoned. However, "Your Work" will be deemed completed at the earliest of the following times:

       (1) When all of the work called for in your contract has been completed;

       (2) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

       (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Includes copyrighted material of Insurance Services Office, with its permission

2. Does not include "Bodily Injury" or "Property Damage" arising out of:

   a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "Loading or Unloading" of that vehicle by any Insured;

   b. The existence of tools, uninstalled equipment or abandoned or unused materials; or

   c. Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

Z. "Professional Medical Services" means the rendering or failing to render:

   1. Medical, surgical, dental, x-ray, or nursing service or treatment, or the furnishing of food or beverage in connection therewith;

   2. Any health or therapeutic service, treatment, advice or instruction;

   3. Any counseling service, social service, or other such treatment;

   4. The furnishing or dispensing of pharmacotherapeutic agents, including chemical and biologic product or medical, dental or surgical appliances or equipment;

   5. The postmortem handling of human bodies, including autopsies, organ donation or other procedures relating to the postmortem handling of human bodies; or

   6. Service by any persons, as members of a formal accreditation standards review, peer review, credentialing or similar board or committee of the Named Insured, or the administrative acts of a person charged with executing the directives of such board or committee while performing these services as respects the employees or staff members of the Named Insured.

AA. "Professional Services" means services rendered by the Insured in its capacity as a "Managed Care Organization".

   As used in this definition:

   1. "Managed Care Organization" means any entity that conducts the following services:

      a. "Peer Review" for another entity that is not an Insured;

      b. "Utilization Review";

      c. "Case Management";

      d. Quality assurance review of "Professional Medical Services";

      e. "Marketing of Health Care Services";

      f. Processing of enrollment applications;

      g. "Handling and Adjusting Health Care Claims";

      h. Negotiating of contracts with providers of "Professional Medical Services" or ancillary services; and

      i. Administration and management of these services as provided by the Insured.

   2. "Peer Review" means credentialing of medical service providers and duly authorized review of quality and cost of medical services of contracted providers by a professional review board or committee of the Insured through a formally adopted written procedure.

   3. "Utilization Review" means the process of evaluating the appropriateness of patient use of medical care resources, including prospective review to authorize treatment or expenses, concurrent review to assess continued patient care and retrospective review to assess "Professional Medical Services" already rendered.

   4. "Case Management" means the process for identifying patients with specific health care needs in order to facilitate the development and implementation of a plan to efficiently use health care resources to achieve optimum patient outcome.

   5. "Marketing of Health Care Services" means drafting, advertising, promoting, selling or issuing managed care plans, or other insurance products provided by the Insured or on the Insured's behalf, providing for defined benefits that are directly or substantially related to health care treatment or services rendered by a health care provider to any person other than an Insured.

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000025

6. "Handling and Adjusting Health Care Claims" means claims handling and adjusting that involves a determination by an Insured of health care or wage benefits owed to any person other than an Insured, according to a managed care benefit plan, indemnity health insurance contract, workers' compensation law, disability benefits law or no-fault automobile law.

BB. "Property Damage" means:

1. Physical injury to tangible property, including all resulting loss of use of such property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "Occurrence" that caused it.

For purpose of this insurance, "Electronic Data" is not tangible property.

CC. "Retained Limit" means the sum stated in the Declarations as such. This is the minimum amount for which the Insured is liable on each and every "Claim" according to the terms of Section I – LIMITS OF INSURANCE of this policy.

DD. "Self Insured Retention" means any amounts listed on the Schedule of Underlying Self Insurance as such. It is the amount the Named Insured must pay for each "Claim" before we will pay "Claims" for which insurance is provided under the applicable Coverage Part, subject to the terms and conditions of this policy.

EE. "Suit" means a civil proceeding in which damages are sought to which this insurance applies. "Suit" includes:

1. An arbitration proceeding in which such damages are sought and to which the Insured must submit or does submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are sought and to which the Insured submits with our consent.

FF. "Temporary Worker" means a person who is furnished to you to substitute for a permanent "Employee" on leave or to meet seasonal or short-term workload conditions.

GG. "Underlying Insurance" means the insurance policies listed in the Schedule of Underlying Insurance, and any "Self Insured Retention" listed in the Schedule of Underlying Self Insurance. "Underlying Insurance" shall not mean any insurance policy or "Self Insured Retention" written to be specifically excess of this policy.

HH. "Volunteer Worker" means a person who is not your "Employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

II. "Wrongful Act" means any alleged or actual negligent act, error or omission in the rendering or failing to render "Professional Services" by the Insured.

JJ. "Your Product":

1. Means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

2. Includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Product"; and

b. The providing of or failure to provide warnings or instructions.

3. Does not include vending machines or other property rented to or located for the use of others but not sold.

KK. "Your Work":

1. Means:

a. Work or operations performed by you or on your behalf; and

Includes copyrighted material of Insurance Services Office, with its permission

CONFIDENTIAL

AW000026

      b.   Materials, parts or equipment furnished in connection with such work or operations.

  2.  Includes:

      a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work"; and

      b.   The providing of or failure to provide warnings or instructions.

## VII. GOVERNMENT ACCESS TO RECORDS

In accordance with the requirements of Section 952 of the Omnibus Reconciliation Act of 1980, and upon written request, we will allow the Secretary of Health and Human Services and the Comptroller General access to the policy and necessary books, documents and records to verify the cost of the policy, to the extent required by law. Access will also be allowed to subcontracts between us and any related organization of ours and to its books, documents and records. Such access will be provided up to four (4) years after the services furnished under this policy end.

CONFIDENTIAL

AW000027

# Health Care Umbrella Liability Policy
## HEALTH CARE PROFESSIONAL LIABILITY – CLAIMS MADE



**ZURICH**

THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE AND VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

I. **COVERAGE**

    A. We will pay on behalf of the Insured those sums in excess of the "Applicable Underlying Limit" that the Insured is legally obligated to pay as damages because of an injury to which this insurance applies, provided that the injury is caused by a "Medical Incident" which took place on or after the Retroactive Date and before the end of the "Policy Period", and either:

        1. The specific circumstances of the "Medical Incident" are first reported to us in writing by an Insured during the "Policy Period".

        All "Claims" that arise out of such "Medical Incident" will be deemed to have been first made on the date we first received written notice of the "Medical Incident" from the Insured; or

        2. A "Claim" for damages, with respect to the injury, is first made during the "Policy Period" or Extended Reporting Period, if applicable, and that "Claim" is reported to us in writing by an Insured:

            a. During the "Policy Period"; or

            b. During an Extended Reporting Period we provide in accordance with Common Policy Provisions, Section VIII - EXTENDED REPORTING PERIOD.

        All "Claims" that arise out of a "Medical Incident" will be deemed to have been made at the time the first of those "Claims" was reported to us in writing.

    B. The amount we will pay for damages is limited as described in the Common Policy Provisions, Section I – LIMITS OF INSURANCE.

    C. This insurance does not apply to any "Claims" that are covered under any other Coverage Part attached to this policy, unless otherwise stated.

II. **WHO IS AN INSURED**

    A. If you are:

        1. An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

        2. A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the conduct of your business.

        3. A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers.

        4. An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "Executive Officers" and directors are Insureds, but only with respect to their duties as your "Executive Officers" or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

        5. A trust, you are an Insured. Your trustees are also Insureds, but only with respect to their duties as trustees.

    B. The following are also Insureds under this Coverage Part:

        1. Any "Employee" of the Named Insured while acting within the scope of their duties as such, except physicians or surgeons (including, but not limited to, residents, externs, interns and fellows); podiatrists; chiropractors; dentists; nurse midwives; or certified registered nurse anesthetists;

CONFIDENTIAL

AW000028

2. Any "Volunteer Worker" authorized by the Named Insured while acting within the scope of their duties as such, except any healthcare providers listed in Paragraph B1 above;

3. Any person or member of a formal accreditation, standards review or similar professional board or committee of the Named Insured or any person executing the directives of such board or committee, while acting within the scope of their duties as such;

4. Any student of the health care professions who is in training programs sponsored and controlled by the Named Insured; and

5. Any medical director or administrator but solely as respects their administrative duties performed for and on behalf of the Named Insured.

C. If an Insured dies or is adjudged incompetent, this insurance will terminate for that Insured. But the Insured's legal representative will be an Insured for any "Medical Incident" previously committed by the Insured who died or was adjudged incompetent, provided such "Medical Incident" is otherwise covered by this policy, and only with respects to duties as the legal representative. That representative will have all of that Insured's rights and duties under this Coverage Part.

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

III. **EXCLUSIONS**

In addition to the Common Policy Provisions, Section V – EXCLUSIONS, this insurance does not apply to any liability, damage, loss, cost or expense:

A. **Aircraft, Auto, Helipad or Heliport or Watercraft**
Arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "Auto", helipad or heliport or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and "Loading or Unloading".

This exclusion does not apply to loading or unloading of patients.

B. **Contractual Liability**
Which the Insured is obligated to pay by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement.

C. **Employee Benefits**
Arising out of the "Administration" of your "Employee Benefit Program".

D. **Employer's Liability**
Arising out of any injury to:

1. An "Employee" of the Insured arising out of and in the course of:

   (a) Employment by the Insured; or

   (b) Performing duties related to the conduct of the Insured's business; or

2. The spouse, child, parent, brother or sister of that "Employee" as a consequence of Paragraph D1 above.

This exclusion applies:

1. Whether the Insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

E. **Managed Care Liability**
Arising out of "Wrongful Acts" committed by the Insured and arising out of the rendering of or failure to render "Professional Services" in the conduct of the Insured's business.

F. **Pollution**
1. Arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants" at any time.

CONFIDENTIAL

AW000029

2. Arising out of any:

   a. Request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "Pollutants"; or

   b. "Claim" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "Pollutants".

**G. Prior Known Acts**

Any "Claim" based upon, arising out of or relating to any "Medical Incident" that was known or should have been known by an Insured, or was first reported to any insurer, prior to the effective date of the "Policy Period".

If an Insured is added to this policy subsequent to the effective date of the "Policy Period", then this insurance shall not apply to any "Claim" based upon, arising out of or relating to any "Medical Incident" that was known or should have been known by that Insured, or was first reported to any insurer, prior to the date that such Insured was added to this policy.

If this Coverage Part was added to this policy subsequent to the inception date of the "Policy Period", then this insurance shall not apply to any "Claim" based upon, arising out of or relating to any "Medical Incident" that was known or should have been known by an Insured, or was first reported to any insurer, prior to the date that this Coverage Part was added to this policy.

## IV. AMENDED RIGHTS AND DUTIES OF THE INSURED

With respect to the coverage provided under this coverage part only, the Common Policy Provisions, Section VI – RIGHTS AND DUTIES OF THE INSURED, Condition D is amended to include the following:

**D. Notice Provisions**

You must give prompt written notice to us of any "Claim" or "Medical Incident" involving the following circumstances or outcomes, regardless of liability:

1. **Deaths:**

   Unexpected deaths; i.e. not foreseen as an expected natural consequence of the medical situation, including suicides.

2. **Cardiac or Respiratory Arrest:**

   Sudden, unexpected cardiac or pulmonary arrest not foreseen as an expected natural consequence of the medical situation, that requires the use of cardiopulmonary resuscitation (CPR) which is successful or unsuccessful.

3. **Systemic or Body Impairment:**

   Unanticipated neurological, sensory or systemic deficits that may include but are not limited to:

   a. Brain damage;

   b. Permanent paralysis such as paraplegia or quadriplegia;

   c. Complete or partial loss of sight or hearing;

   d. Reproductive organ injury that results in the loss of ability to conceive or bear children;

   e. Renal failure requiring long-term dialysis or renal transplant; or

   f. Sepsis requiring treatments in intensive care unit.

4. **Birth Related Injuries**

   a. Any unexpected fetal death;

   b. Any infant resuscitation requiring intubation;

   c. Any unanticipated transfer to a neonatal intensive care unit (NICU); or

   d. Any infant injury involving brachial plexus injury, fractures or dislocations.

5. **Surgical or Anesthetic Injuries:**

CONFIDENTIAL

AW000030

a. Any unanticipated or unplanned retention of or discovery of a foreign body requiring surgical removal; or

b. Any surgical procedure to repair or remove any organ or body part that was damaged during surgery(s) or other procedures.

6. **Other Iatrogenic Injuries:**

a. Severe burns to the skin or internal organs as a result of thermal, chemical, radiological or electrical sources or a combination of any sources; requiring medical or surgical treatment or causing significant disfigurement;

b. Fractures or dislocations requiring surgical repair;

c. Nosocomial (institutionally acquired) infections requiring treatment in intensive care unit; or

d. Medication errors or other treatment errors resulting in death, significant permanent disability or treatment in an intensive care unit.

CONFIDENTIAL

AW000031

# Health Care Umbrella Liability Policy

**Commercial Liability – Coverages A and B**


**ZURICH**

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED. THE PROVISIONS OF THIS COVERAGE PART APPLY EXCESS OF COMMERCIAL GENERAL LIABILITY, AUTOMOBILE LIABILITY, EMPLOYER'S LIABILITY OR ANY OTHER "APPLICABLE UNDERLYING INSURANCE" FOR WHICH NO SPECIFIC COVERAGE PART OF THIS POLICY OTHERWISE APPLIES.

I. Coverages

   A. **Coverage A – Excess Follow Form Commercial Liability Insurance**

   Under Coverage **A**, we will pay on behalf of the Insured those sums in excess of the "Applicable Underlying Limit" that the Insured is legally obligated to pay as damages to which this insurance applies. The terms and conditions of "Underlying Insurance" are, with respect to Coverage **A**, made part of this policy, except with respects to:

   1. Any contrary provision contained in this policy; or

   2. Any provision in this policy for which a similar provision is not contained in the "Underlying Insurance".

   With respects to the exceptions stated above, the provisions of this policy will apply.

   Notwithstanding anything to the contrary contained above, if "Underlying Insurance" does not cover damages, for reasons other than exhaustion of "Applicable Underlying Limits" by payment of "Claims", then we will not cover such damages.

   B. **Coverage B – Umbrella Commercial Insurance**

   Under Coverage **B**, we will pay on behalf of the Insured those sums in excess of the "Applicable Underlying Limit" that the Insured is legally obligated to pay as damages by reason of liability imposed by law or assumed under an "Insured Contract" because of "Bodily Injury", "Property Damage" or "Personal and Advertising Injury" to which this Insurance applies.

   Coverage **B**, will not apply to any "Claim" for which insurance is afforded under "Underlying Insurance" or would have been afforded except for the exhaustion of the limits of insurance of "Underlying Insurance".

   C. The insurance afforded under Coverage A and Coverage B applies to "Bodily Injury" and "Property Damage" only if:

   1. The "Bodily Injury" or "Property Damage" is caused by an "Occurrence";

   2. The "Bodily Injury" or "Property Damage" occurs during the "Policy Period"; and

   3. Prior to the "Policy Period", no Insured listed under Commercial Liability – Coverages **A** and **B**, Section II – WHO IS AN INSURED, Paragraphs **B1** through **B5** and no "Employee" authorized by you to give or receive notice of an "Occurrence" or "Claim", knew that the "Bodily Injury" or "Property Damage" had occurred, in whole or in part. If such a listed Insured or authorized "Employee" knew, prior to the "Policy Period", that the "Bodily Injury" or "Property Damage" occurred, then any continuation, change or resumption of such "Bodily Injury" or "Property Damage" during or after the "Policy Period" will be deemed to have been known prior to the "Policy Period".

   D. "Bodily Injury" or "Property Damage" which occurs during the "Policy Period" and was not, prior to "Policy Period", known to have occurred by any Insured listed under Commercial Liability – Coverages **A** and **B**, Section II – WHO IS AN INSURED, Paragraphs **B1** through **B5** or any "Employee" authorized by you to give or receive notice of an "Occurrence" or "Claim", includes any continuation, change or resumption of that "Bodily Injury" or "Property Damage" after the end of the "Policy Period".

   E. "Bodily Injury" or "Property Damage" will be deemed to have been known to have occurred at the earliest time when any Insured listed under Commercial Liability – Coverages **A** and **B**, Section II – WHO IS AN INSURED, Paragraphs **B1** through **B5** or any "Employee" authorized by you to give or receive notice of an "Occurrence" or "Claim":

   1. Reports all, or any part, of the "Bodily Injury" or "Property Damage" to us or any other insurer;

   2. Receives a written or verbal demand or "Claim" for damages because of the "Bodily Injury" or "Property Damage"; or

CONFIDENTIAL

AW000032

3. Becomes aware by any other means that "Bodily Injury" or "Property Damage" has occurred or has begun to occur.

F. Damages because of "Bodily Injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "Bodily Injury".

G. The amount we will pay for damages is limited as described in the Common Policy Provisions, Section I – LIMITS OF INSURANCE.

H. This insurance afforded under Coverage A and Coverage B does not apply to any "Claims" which are covered under any other Coverage Part attached to this policy unless otherwise stated.

## II. WHO IS AN INSURED

A. With respect to Coverage A:

1. You; and

2. Any person or organization included as an insured in "Underlying Insurance"

B. With respect to Coverage B, if you are:

1. An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "Executive Officers" and directors are Insureds, but only with respect to their duties as your "Executive Officers" or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

5. A trust, you are an Insured. Your trustees are also Insureds, but only with respect to their duties as trustees.

6. Each of the following is also an Insured:

    a. Your "Volunteer Workers" only while performing duties related to the conduct of your business, or your "Employees", other than either your "Executive Officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "Employees" or "Volunteer Workers" are Insureds for:

       (1) "Bodily Injury" or "Personal and Advertising Injury":

           (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"Employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "Volunteer Workers" while performing duties related to the conduct of your business;

           (b) To the spouse, child, parent, brother or sister of that co-"Employee" or "Volunteer Worker" as a consequence of Paragraph (1)(a) above;

           (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (1)(b) above; or

           (d) Arising out of his or her providing or failing to provide "Professional Medical Services".

       (2) "Property Damage" to property:

           (a) Owned, occupied or used by; or

           (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "Employees", "Volunteer Workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

CONFIDENTIAL

AW000033

    **b.** Any person (other than your "Employee" or "Volunteer Worker"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

    **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

  **7.** With respect to "Mobile Equipment" registered in your name under any motor vehicle registration law, any person is an Insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an Insured with respect to:

    **a.** "Bodily Injury" to a co-"Employee" of the person driving the equipment; or

    **b.** "Property Damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an Insured under this provision.

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in **Item 1** of the Declarations.

## III. ADDITIONAL EXCLUSIONS

In addition to the Common Policy Provisions, Section **V** -- EXCLUSIONS, under Coverage **A** and Coverage **B**, this insurance does not apply to any liability, damage, loss, cost or expense:

### A. Fungus or Bacteria

Arising out of "bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

  **1.** "Fungi" or "Bacteria"; or

  **2.** Substance, vapor or gas produced by or arising out of any "Fungi" or "Bacteria".

Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "Fungi" or "Bacteria", by any insured or by any other person or entity.

For the purposes of this exclusion, the following definitions are added:

  **1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "Spores", scents or byproducts produced or released by fungi.

  **2.** "Spores" means reproductive bodies produced by or arising out of "Fungi".

  **3.** "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "Fungi" or "Bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

### B. Loss of or Loss of Use of Intangible Property

Arising out of the loss of or loss of use of, damage to, corruption of, inability to access, or inability to manipulate intangible property. For purposes of this insurance, "Electronic Data" is intangible property.

### C. Managed Care Liability

Arising out of "Wrongful Acts" committed by any Insured and arising out of the rendering of or failing to render "Professional Services" in the conduct of the Insured's business.

### D. Professional Medical Services

Arising out of the rendering or failing to render "Professional Medical Services".

**CONFIDENTIAL**

AW000034

**E. Uninsured/Underinsured Motorists**

Arising out of any uninsured/underinsured motorist or auto no fault or first party personal injury law. In addition to the Common Policy Provisions, Section **V** – EXCLUSIONS, under Coverage **A** this insurance does not apply to any liability, damage, loss, cost or expense:

**A. Pollution**

1. Arising directly or indirectly out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":

   a. At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to any Insured.

   b. At or from any premises site or location, which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste.

   c. Which are or were at any time transported, handled, stored, treated, disposed of or processed as waste.

   d. At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

      (1) If the "Pollutants" are brought on or to the premises, site or location in connection with such operations by such "Insured", contractor or subcontractor; or

      (2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or asses the effects of "Pollutants".

   e. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled or handled for movement into, onto or from any auto for which coverage is provided by "Underlying Insurance";

      (2) Otherwise in the course of transit by or on behalf of any Insured; or

      (3) Being stored, disposed of, treated or processed in or upon any auto.

2. Arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "Pollutants"; or

   b. "Claim" brought by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "Pollutants".

3. Subparagraphs **1a** and **1d(1)** do not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke, or fumes from a "Hostile Fire".

4. Subparagraph **1a** does not apply to:

   a. "Bodily Injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

   b. "Bodily Injury" or "Property Damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not or never was owner, occupies by, rented to or loaned to any Insured, other than that additional insured; or

   c. "Bodily Injury" or "Property Damage" arising out of the escape of fuels, lubricants or other operating fluids from any "Auto".

5. Subparagraph **1d(1)** does not apply to "Bodily Injury" or "Property Damage":

   a. Sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

CONFIDENTIAL

AW000035

     **b.**   Arising out of the escape of fuels, lubricants or other operating fluids from "Mobile Equipment".

As used in this exclusion, "Hostile Fire" means one, which becomes uncontrollable or breaks out from where it was intended to be.

In addition to the Common Policy Provision, Section **V** – EXCLUSIONS, under Coverage **B** this insurance does not apply to any liability, damage, loss, cost or expense:

**A.  Aircraft, Helipad or Heliport, Autos, Mobile Equipment or Watercraft**

Arising out of the ownership, maintenance, operation, use, "Loading or Unloading" or entrustment to others of any:

1. Aircraft owned by you or rented, loaned or chartered by or on behalf of you without crew;

2. Helipad or heliport;

3. "Auto";

4. "Mobile Equipment"; or

5. Watercraft owned by you except watercraft while ashore on premises you own or rent.

Use also includes the loading and unloading of patients.

This exclusion applies even if the "Claims" against any Insured allege negligence or other wrongdoing in the supervision, hiring , employment, training or monitoring of others by the Insured.

**B.  Contractual Liability**

Arising out of "Bodily Injury" or "Property Damage" which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. That the Insured would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "Insured Contract", provided the "Bodily Injury" or "Property Damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "Insured Contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of "Bodily Injury" or "Property Damage", provided:

    **a.**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "Insured Contract"; and

    **b.**   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**C.  Damage to Property**

Arising out of "Property Damage" to:

1. Property you own, rent or occupy, including any costs or expenses incurred by you, or any person or organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. Premises you sell, give away or abandon if the "Property Damage" arises out of any part of those premises;

3. Property loaned to you;

4. Personal Property in your care, custody or control;

5. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "Property Damage" arises out of those operations; or

6. That particular part of any property that must be restored, repaired or replaced because "Your Work" was incorrectly performed on it;

**D.  Damage to "Your Product"**

Arising out of "Property Damage" to "Your Product" resulting from it or any part of it.

**E.  Damage to "Your Work"**

**CONFIDENTIAL**

AW000036

Arising out of "Property Damage" to "Your Work" resulting from it or any part of it and included in the "Products-Completed Operations Hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

F. **Employee Benefits**

Arising out of the "Administration" of your "Employee Benefits Program".

G. **Employee Injury**

    1.  Arising out of any injury to an "Employee" of the Insured resulting from and in the course of:

        a.  Employment by the Insured; or

        b.  Performing duties related to the conduct of the Insured's business; or

    2.  Any injury to the spouse, child, parent, brother or sister of that employee as a consequence of G1 above.

This exclusion applies whether the Insured may be liable as an employer or in any other capacity; or to any obligation to share damages with or repay someone else who must pay damages because of an injury.

H. **Expected of Intended Injury**

Arising out of "Bodily Injury" or "Property Damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "Bodily Injury" or "Property Damage" resulting from the use of reasonable force to protect persons or property.

I. **Impaired Property**

Arising out of "Property Damage" to "Impaired Property" or property that has not been physically injured resulting from:

    1.  A defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

    2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accident physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

J. **Insured vs. Insured**

Arising out of "Bodily Injury", "Property Damage" or "Personal and Advertising Injury" which is initiated, alleged, or caused to be brought about by any Insured covered by this policy against any other Insured covered by this policy.

K. **Liquor Liability**

Arising out of "Bodily Injury" or "Property Damage" for which any Insured may be held liable by reason of:

    1.  Causing or contributing to the intoxication of any person;

    2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    3.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

L. **Personal And Advertising Injury**

Arising from "Personal and Advertising Injury":

    1.  Caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "Personal and Advertising Injury".

    2.  Arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

CONFIDENTIAL

AW000037

3. Arising out of oral or written publication of material whose first publication took place before the beginning of the "Policy Period".

4. Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

5. Arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control.

6. For which the Insured has assumed liability in a contract or agreement.

7. However, L6 does not apply to liability for damages that the Insured would have had in the absence of the contract or agreement.

8. Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "Advertisement".

9. Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "Advertisement".

10. Arising out of the wrong description of the price of goods, products or services stated in your "Advertisement".

Arising out of the infringement of or inducement to infringe copyright, patent, servicemark, trademark, trade secret, or other intellectual property rights.

However, L10 does not apply to infringement or inducement to infringe copyright, trade dress or slogan in your "Advertisement".

11. Committed by an Insured whose business is:

    a. Advertising, broadcasting, publishing, electronic publishing or telecasting;

    b. Designing or determining content of web-sites for others; or

    c. An Internet search, access or content provider.

    However, L 11 does not apply to the Common Policy Provisions, Section X – DEFINITIONS, Paragraphs T1, T2, and T3. For purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself considered the business of advertising, broadcasting, electronic publishing or telecasting.

**M. Pollution**

1. Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration, dispersal, release or escape of "Pollutants".

2. Arising out of any:

    a. Request, demand or order that any Insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "Pollutants"; or

    b. "Claim" brought by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "Pollutants".

**N. Recall of Products, Work or Impaired Property**

Arising out of the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your Product";

2. "Your Work"; or

3. "Impaired Property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

CONFIDENTIAL

AW000038

# Health Care Umbrella Liability Policy



**EMPLOYEE BENEFIT PROGRAM ADMINISTRATION LIABILITY – CLAIMS MADE**

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE AND VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.**

**Employee Benefits Program Administration Liability Retroactive Date:     06/01/2002**

## I.   CONDITIONS OF COVERAGE

This Coverage Part will apply only if the following conditions have been met:

**A.**   Employee Benefit Program Administration Liability is covered by "Underlying Insurance" for the full limits shown in the Schedule of Underlying Insurance or Schedule of Underlying Self Insurance; and

**B.**   Such liability is not excluded by any other term, condition or exclusion of this Coverage Part, or the Common Policy Provisions.

If the foregoing conditions are met, coverage under this Coverage Part for such liability shall only be available to the extent coverage is afforded by each layer of "Underlying Insurance".

## II.   COVERAGE

**A.**   We will pay on behalf of the Insured those sums in excess of the "Applicable Underlying Limit" that the Insured becomes legally obligated to pay as damages because of an "Occurrence" to which this insurance applies provided that the "Occurrence" arises from the "Administration" of your "Employee Benefit Program". The "Occurrence" must have taken place on or after the Employee Benefits Program Administration Liability Retroactive Date shown above and before the end of the "Policy Period", and either:

1.   The specific circumstances of the "Occurrence" are first reported to us in writing by an Insured during the "Policy Period".

All "Claims" that arise from substantially the same or interrelated "Occurrence(s) will be deemed to have been first made on the date we first received written notice of the "Occurrence" from the Insured; or

2.   A "Claim" for damages is first made during the "Policy Period" or Extended Reporting Period, if applicable, and that "Claim" is reported to us in writing by an Insured:

a.   During the "Policy Period"; or

b.   During an Extended Reporting Period we provided in accordance with Common Policy Provisions, Section VIII – EXTENDED REPORTING PERIOD.

All "Claims" that arise out of substantially the same or interrelated "Occurrence" will be deemed to have been made at the time the first of those "Claims" was first reported to us in writing.

**B.**   This Coverage Part does not apply to any "Claims" which are covered under any other Coverage Part attached to this policy, unless otherwise stated.

## III.   WHO IS AN INSURED

**A.**   If you are:

1.   An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

2.   A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the "Administration" of your "Employee Benefit Program".

CONFIDENTIAL

AW000039

3. A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the "Administration" of your "Employee Benefits Program". Your managers are Insureds, but only with respect to their duties as your managers in the "Administration" of your "Employee Benefit Program".

4. An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "Executive Officers" and directors are Insureds, but only with respect to their duties as your "Executive Officers" or directors in the "Administration" of your "Employee Benefit Program".

5. A trust, you are an Insured. Your trustees are also Insureds, but only with respect to their duties as trustees in the "Administration" of your "Employee Benefit Program".

B. The following are also Insureds under this Coverage Part:

Any "Employees" of the Named Insured who is or was authorized to administer the Insured's "Employee Benefit Program".

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in **Item 1** of the Declarations.

## IV. AMENDED DEFINITIONS

As respects the insurance provided by this Coverage Part, the following is added to Common Policy Provisions, Section **X** – DEFINITIONS, Paragraph **R**:

With respect to "Administration" of your "Employee Benefit Program", a covered actual or alleged act, error or omission. All damages that arise from interrelated "Occurrences" are considered to arise out of the same "Occurrence", regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

## V. ADDITIONAL EXCLUSIONS

In addition to the Common Policy Provisions, Section **V** – EXCLUSIONS, this Coverage Part does not apply to any liability, damage, loss, cost or expense arising out of:

A. Any obligation or liability incurred by or imposed upon an Insured (or which are imputed to any Insured) under the Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments;

B. "Bodily Injury", "Property Damage" or "Personal and Advertising Injury";

C. An insurer's or other provider's failure to perform it's contract;

D. Failure of any part of the Insured's "Employee Benefit Program" to meet its obligation due to insufficient funds;

E. Failure of any investment to perform as represented by the Insured;

F. Advice given by any Insured to participate in any part of your "Employee Benefit Program";

G. The rendering or failure to render "Professional Medical Services"; or

H. Any "Wrongful Acts".

I. Any "Claim" based upon, arising out of or relating to any "Occurrence" that was known or should have been known by an Insured, or was first reported to any insurer, prior to the effective date of the "Policy Period".

If an Insured is added to this policy subsequent to the effective date of the "Policy Period", then this insurance shall not apply to any "Claim" based upon, arising out of or relating to any "Occurrence" that was known or should have been known by that Insured, or was first reported to any insurer, prior to the date that such Insured was added to this policy.

If this Coverage Part was added to this policy subsequent to the effective date of the "Policy Period", then this insurance shall not apply to any "Claim" based upon, arising out of or relating to any "Occurrence" that was known or should have been known by an Insured, or was first reported to any insurer, prior to the date that this Coverage Part was added to this policy.

CONFIDENTIAL

AW000040

# Important Notice



**ZURICH**

**Service of Suit**

In the event of our failure to pay any amount to be due under this policy, at your request, we will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is agreed that service of process in such suit may be made upon our General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and we will abide by the final decision of such court or of any appellate court in the event of an appeal of any suit initiated against us under this policy.

If any statute of any state, territory or district of the United States requires service of process be made upon an officer of the state, we designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for this purpose in the statute, as our true and lawful attorney whom may be served any lawful process instituted by you or on your behalf, or any beneficiary, arising out of this policy. We designate our General Counsel as the person to whom the officer is authorized to mail such process.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of this policy, we agree to provide insurance as stated in this policy. This policy shall not be valid unless countersigned by our duly authorized representative.

In Witness Whereof, we have executed this policy, and, where required, have had it countersigned by our duly authorized representative.

**President**
**Steadfast Insurance Company**

**Corporate Secretary**
**Steadfast Insurance Company**

CONFIDENTIAL

AW000041

Endorsement # 1

# Unimpaired Underlying Aggregate Limit
# Endorsement – Non-concurrency



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

The following is added to the Common Policy Provisions, Section I – LIMITS OF INSURANCE:

K. Any aggregate limits of insurance provided by "Applicable Underlying Insurance" will be unimpaired at the inception date of this policy, shown in **Item 5** of the Declarations.

For the purposes of any Claims Made Coverage Part(s) attached to this policy, only damages arising from "Claims" first made under the "Applicable Underlying Insurance" during our "Policy Period" will be considered in determining the extent of any exhaustion of the "Applicable Underlying Insurance".

For the purposes of any other Coverage Part(s) attached to this policy, only damages arising from "Occurrences" or "Medical Incidents" that take place during our "Policy Period" will be considered in determining the extent of any exhaustion of the "Applicable Underlying Insurance".

All other terms, conditions, provisions and exclusions of the policy remain the same.

Signed by:_____          _____
                    Authorized Representative                                       Date

U-HCU-740-A CW (07/03)
Page 1 of 1

CONFIDENTIAL                                                                AW000042

Endorsement # 2

# Named Insured Extension Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

The Named Insured as shown in **Item 1** of the Declarations and the Retroactive Date as shown in **Item 7** of the Declarations are amended to include the following:

<u>Named Insured</u>

Per Schedule on File with Company with the exception of the following which are excluded:

Quorum Health Resources, LLC
American Health Facilities Development, LLC
Cambio Health Solutions, LLC
QHR International, LLC
Software Sales Corporation
The Intensive Resource Group, LLC

<u>Retroactive Date</u>

All other provisions of this policy remain unchanged.

Signed by: _____
        Authorized Representative

_____
Date

**CONFIDENTIAL**

AW000043

Endorsement # 3

# Amended Definition of Insured  Endorsement


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN  37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN  37067

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

Health Care Professional Liability Claims Made Coverage Part, Section II – WHO IS AN INSURED, Paragraph **B**, Subparagraph 1, is deleted in its entirety and replaced by:

1.   Any "Employee" of the Named Insured while acting within the scope of his or her duties as such;

All other terms, conditions, provisions and exclusions of the policy remain the same.

Signed by:_____          _____
                    Authorized Representative                                    Date

U-HCU-737-A CW  (07/03)
Page 1 of 1

CONFIDENTIAL

AW000044

Endorsement # 4

# "Defense Expenses" and "Post-judgment Interest" Reduce Limits of Insurance Endorsement



ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

Common Policy Provisions, Section III – DEFENSE AND EXPENSES FOR CLAIMS, Paragraphs **D** and **E** are deleted in their entirety and replaced by:

**D.**   We will pay, as damages, "Defense Expenses" and "Post-judgment Interest" incurred by us in the investigation or defense of any "Claim". The payment of such "Defense Expenses" and "Post-judgment Interest" shall reduce the Limits of Insurance provided under this policy.

**E.**   Our right and duty to defend an Insured against any "Claim" ends after we have exhausted the applicable Limit of Insurance as stated in the Declarations, in payment of judgments, settlements, "Defense Expenses" or "Post-judgment Interest".

All other terms, conditions, provisions and exclusions of the policy remain the same.

Signed by: _____     _____
                          Authorized Representative                              Date

CONFIDENTIAL                                                                                                      AW000045

Endorsement # 5

# "Defense Expenses" In Addition to Self-Insured Retention Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

Common Policy Provisions, Section I – LIMITS OF INSURANCE, Paragraph **G** is deleted in its entirety and replaced by:

> G. Any limits of insurance provided under a "Self-Insured Retention" listed in the Schedule of Underlying Self Insurance, whether or not such insurance is provided according to the terms of a written trust agreement or otherwise, will apply separately to each and every "Claim".
>
> Any aggregate limits of insurance for such "Self-Insured Retention" will be considered eroded or exhausted only by actual payment of "Claims" that would be insured by the terms of this policy. Any "Defense Expenses" incurred by any Insured will be the responsibility of the Insured and such "Defense Expenses" will not erode or exhaust the aggregate limits of insurance of the "Self-Insured Retention".

Common Policy Provisions, Section IV – SETTLEMENT OF CLAIMS – SELF INSURED RETENTION, Paragraph **C** is deleted in its entirety and replaced by:

> C. If during the "Policy Period", any "Self-Insured Retention" has been exhausted by the payment of "Claims" to which this policy applies, we shall at that time have the right and duty to settle existing and new "Claims" which would have been covered by the exhausted "Self-Insured Retention" as we deem expedient and without the Insured's consent.

Common Policy Provisions, Section VI – RIGHTS AND DUTIES OF THE INSURED, Paragraph **C1**f is deleted in its entirety and replaced by:

> f. The limits of insurance applicable to any Self-Insured Retention listed in the Schedule of Underlying Self Insurance may not be reduced or exhausted for any reason other than the payment of judgments or settlements which would be covered by the provisions of this policy.

Common Policy Provisions, Section X – DEFINITIONS, Paragraph **C** is deleted in its entirety and replaced by:

U-HCU-735-A CW (07/03)
Page 1 of 2

CONFIDENTIAL

AW000046

**C.** "Applicable Underlying Limit" means the total of all available limits of insurance for the applicable "Underlying Insurance" plus any "Other Insurance".

For the purposes of determining the "Applicable Underlying Limit" the limits of insurance for any "Underlying Insurance" or "other insurance" will apply even if the insurer providing the "Underlying Insurance" or "Other Insurance" claims the Insured failed to comply with any condition of the policy; or that Insurer becomes bankrupt or insolvent.

Any aggregate limit of insurance provided by an insurance policy within the "Applicable Underlying Limit" shall be considered eroded or exhausted only by the actual payment of "Claims" that would be insured by the provisions of this policy.

Any "Self-Insured Retention" aggregate amount within the "Applicable Underlying Limit" shall be considered eroded or exhausted only by the actual payment of "Claims" that would be insured by the provisions of this policy.

All other terms, conditions, provisions and exclusions of the policy remain the same.

Signed by: _____     _____
                   Authorized Representative                               Date

CONFIDENTIAL

AW000047

Endorsement # 6

# Related "Medical Incident" Endorsement


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

It is agreed that Section I –LIMITS OF INSURANCE, Paragraph **G** of Common Policy Provisions is deleted in its entirety and replaced by the following:

G.  Any limits of insurance provided under a "Self Insured Retention" listed in the Schedule of Underlying Self Insurance, whether or not such insurance is provided according to the terms of a written trust agreement or otherwise, will apply separately to each and every "Claim". Any aggregate limits of insurance for such "Self Insured Retention" will be considered eroded or exhausted only by actual payment of "Claims" that would be insured by the terms of this policy. Any "Defense Expenses" incurred by any Insured will be considered part of the limits of insurance under such "Self Insured Retention" and such "Defense Expenses" will erode or exhaust the aggregate limits of insurance of the "Self Insured Retention".

For the purpose of this endorsement, all "Claims" that result from one or more "Medical Incident" reported to us during the "Policy Period" that we deem to arise from a series of related actual or alleged acts, errors or omissions in furnishing or failing to furnish "Professional Medical Services" shall be considered one "Claim".

All other terms, conditions, provisions and exclusions of the policy remain unchanged.

Signed by:_____          _____
                  Authorized Representative                                      Date

U-HCU-838-A CW (05/07)
Page 1 of 1

**CONFIDENTIAL**                                                              AW000048

# Certified Act of Terrorism Exclusion – Coverages A and B


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

The following is added to the Common Policy Provisions, Section **V – EXCLUSIONS**:

**A. Exclusion of Certified Acts of Terrorism**

Under **Coverage A** and **Coverage B**, this insurance does not apply to any liability, damage, loss, cost or expense arising, directly or indirectly, out of a "Certified Act of Terrorism", including any action taken in hindering or defending against an actual or expected "Certified Act of Terrorism". This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**B. Definition of Certified Act of Terrorism**

As used in this endorsement and for purposes of applicability to both **Coverage A** and **Coverage B**, "Certified Act of Terrorism"means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA"). TRIA provides that the Secretary of Treasury shall certify an act of terrorism:

1. To be an act of terrorism;

2. To be a violent act or an act that is dangerous to human life, property or infrastructure;

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

All other terms, conditions, provisions and exclusions of the policy remain unchanged.

Signed by: _____          _____
       Authorized Representative                              Date

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CONFIDENTIAL**

Endorsement # 8

# General Purpose Endorsement



## ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

Health Care Umbrella Liability Policy

### Additional Insured – Good Samaritan

Health Care Professional Liability Claims Made Coverage Part, Section II - WHO IS AN INSURED, Paragraph B, is amended to include any "Employee", authorized "Volunteer Worker" or student of the healthcare profession who is in training programs sponsored and controlled by the Named Insured while rendering or performing "Good Samaritan Acts" away from the premises of the Named Insured.

For purposes of this endorsement, "Good Samaritan Act" means any assistance of a medical nature rendered or performed in an emergency situation for which no remuneration is demanded or received provided that such assistance is rendered or performed for the duration of the emergency and the injured party would have suffered additional injury or death had such assistance not been rendered or performed.

All other terms, conditions, provisions and exclusions of this policy remain unchanged.

Signed by:_____     _____
　　　　　Authorized Representative　　　　　　　　　　　Date

U-HCU-405-A CW  (3/98)
Page 1 of 1

CONFIDENTIAL

AW000050

Endorsement # 9

# General Purpose Endorsement


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy - Commercial Liability**

### BLANKET ADDITIONAL INSURED CONTRACTUAL - CGL

Section II - WHO IS AN INSURED of the attached Coverage Parts is amended to include the person or organization shown below as an Additional Insured as required by contract, but only with respect to liabilities arising out of his, her or its operations performed by or for the Named Insured.

This endorsement provides no coverage to the Additional Insured for liabilities arising out of the claimed negligence of the Additional Insured, or out of the negligence of parties other than that of the Named Insured.

**Name of Person or Organization (Additional Insured):**

Refer to Schedule of Contracts on File with Company

All other terms, conditions, provisions and exclusions of this policy remain unchanged

Signed by: _____      _____
        Authorized Representative                      Date

CONFIDENTIAL

AW000051

Endorsement # 10

# General Purpose Endorsement


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

Health Care Umbrella Liability Policy

### EXTENDED REPORTING PERIOD
### HUG (Hospital Underwriting Group, Inc.) Incurred But Not Reported Claims

**Named Insured and Location:**
All entities/facilities (including employed physicians and hospital staff employed by facilities)
Per Schedule on File with acquisition or divestiture date prior to 06/01/2002.

**Retroactive Date:**
Per Schedule on File

In consideration of the premium charged, the Company grants an "Extended Reporting Period" for the above scheduled operations previously covered under the Extended Reporting Period Endorsement of the HUG (Hospital Underwriting Group, Inc.) policy. As respects to this endorsement, the "Extended Reporting Period" will be for claims incurred but not previously reported for the period 09/01/1986 to 06/01/2002. Such "Claim" must arise out of a "Medical Incident" that occurred on or after the Retroactive Date but before 06/01/2002.

This "Extended Reporting Period" does not extend the "Policy Period", change the scope of coverage provided or reinstate the Limit(s) of Insurance as shown in the Declarations.

All other terms, conditions, provisions and exclusions of the policy remain unchanged.

Signed by:_____      _____
                 Authorized Representative                              Date

CONFIDENTIAL

AW000052

Endorsement # 11

# General Purpose Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under:

**Health Care Umbrella Liability Policy**

### Knowledge/Notice of Occurrence

Common Policy Provisions , Section **VI - D**. Notice Provisions,  is amended to add the following:

Knowledge of an "Occurrence", "Medical Incident", or "Claim" shall constitute knowledge by the Named Insured once the office or staff of the Director of Corporate Risk Management for Community Health Systems, Inc. has received such notice.

All other terms, conditions, provisions and exclusions of this policy remain unchanged.

Signed by:_____     _____
      Authorized Representative                         Date

CONFIDENTIAL

AW000053

Endorsement # 12

# General Purpose Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

**Amended Cancellation Notice**

Section IX - CANCELLATION AND NONRENEWAL, Paragraph A., in the Common Policy Provisions is deleted in its entirety and replaced with the following:

**A. Cancellation**

1. The first Named Insured shown in Item 1 Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. Sixty (60) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The "Policy Period" will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be of the customary short-rate calculation subject to the Minimum Earned Premium as specified in **Item 8** of the Declarations. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms, conditions, provisions and exclusions of this policy remain unchanged.

Signed by:_____          _____
      Authorized Representative                              Date

CONFIDENTIAL

AW000054

# General Purpose Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies coverage under the:

**Health Care Umbrella Liability Policy**

### NEWLY FORMED OR ACQUIRED ORGANIZATIONS ENDORSEMENT

Section VII., CONDITIONS, of the Common Policy Conditions is amended to include the following:

**Newly Formed or Acquired Organizations**

1. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain sole or majority ownership or controlling interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a. Coverage under this provision is afforded only until the sixtieth (60th) day after you acquire or form the organization or the end of the "Policy Period", whichever is earlier;

    b. Coverage under this provision does not apply to any "Claim" arising out of any injury or damage that occurred, in whole or in part, before you acquired or formed the organization.

2. In order for coverage to apply for a newly acquired or formed organization after the sixtieth (60th) day:

    a. You must submit an underwriting application, including any required additional information to us, and that submission must be approved by us;

    b. You must pay any additional premium required by us; and

    c. You must agree to any amendment of the provisions of this policy required by us relating to such organization.

All other terms, conditions, provisions and exclusions of this policy remain unchanged..

Signed by: _____     _____

      Authorized Representative                                      Date

CONFIDENTIAL                                                      AW000055

Endorsement # 14

# General Purpose Endorsement


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HPC 5346837 04 | 06/01/2009 | 06/01/2010 | 06/01/2009 | 28557000 | Included | Included |

**Named Insured and Mailing Address:**

Community Health Systems, Inc.
4000 Meridian Boulevard
Suite 400
Franklin, TN 37067

**Producer:**

Aon Risk Services, Inc of TN
501 Corporate Centre Drive, Suite 300
Franklin, TN 37067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Health Care Umbrella Liability Policy**

<b>Broad Form Named Insured Endorsement</b>

Section II - WHO IS AN INSURED of the attached Coverage Parts is amended to include the following:

Community Healthcare Services, and any owned subsidiary, affiliate, association, or allied company, corporation, firm, organization, and the Insured's interest in partnerships and/or joint ventures, and/or any owned (wholly or partially) or controlled company (ies) where the Insured maintains an interest, as now or hereafter constituted or acquired; and any other part or interest that is required by contract or agreement.

All other terms, conditions, provisions and exclusions of this policy remain unchanged.

Signed by: _____         _____
                   Authorized Representative                                   Date

CONFIDENTIAL

AW000056



**ZURICH**

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

**EXCLUDED**

\*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention. The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA. TRIA is scheduled to expire on December 31, 2014.

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Includes copyrighted Material of ISO Properties, Inc. with its permission.
Copyright Zurich American Insurance Company 2006

CONFIDENTIAL                                                                                      AW000057